Nathaniel H. Akerman
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Tel: (212) 415-9200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NORMA KNOPF and MICHAEL KNOPF,      :
                                          Plaintiffs,      :
                                                      : Civil Case No. 1: 15-cv-05090 (DLC)
    -against-      :

MEISTER, SEELIG & FEIN, LLP and      :
PURSUIT HOLDINGS, LLC,      :
                                            Defendants.      :
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### I. PRELIMINARY STATEMENT

Defendant Pursuit Holdings (NY), LLC, formerly known as Pursuit Holdings, LLC, ("Pursuit") submits this memorandum in support of its motion to dismiss the complaint and for sanctions against Plaintiffs' attorney pursuant to Title 28, U.S.C. §1927. Many of the factual predicates underlying this motion are this Court's findings in its October 16, 2015 opinion cancelling the Notices of Pendency against Pursuit's two wholly owned properties filed in conjunction with and based upon the claim in the federal complaint.

The complaint should be dismissed for two reasons. First, the court lacks jurisdiction based on the *Rooker-Feldman* doctrine that prohibits the filing of a federal lawsuit to reverse a state court Decision and Order that was affirmed by the state court's Appellate Division, First Department. The Plaintiffs filed this lawsuit after the state court cancelled the Notices of Pendency based on the state lawsuit and by means of this federal action they placed *ex parte* new Notices of Pendency on the Defendants' two properties located at 44 East 67th Street, Unit PHC,

New York, New York 10021 ("PHC") and 3 interconnected condominium units at 10 Bedford Street, New York, New York (hereinafter "the two Properties"). Plaintiffs purposely used this federal action to circumvent the state court's fully adjudicated findings alleging the very same underlying facts that they had relied upon in the state action to file the original Notices of Pendency. Plaintiffs and their counsel improperly used the federal court system in order to issue replacement Notices of Pendency upon Pursuit's same two Properties, when they were fully aware that the Appellate Division had affirmed the cancellation of identical Notices of Pendency upon the two properties.

Second, even if the Court has jurisdiction over this matter, the Court should instead abstain from exercising its jurisdiction on the basis of the factors set forth by the United States Supreme Court in determining whether abstention of federal jurisdiction is appropriate in particular cases. An application of those factors to this case show that 1) the continuation of this federal action would result in piecemeal litigation, 2) the state court action had been filed 6 years before the federal case resulting in the completion of party depositions and the filing and deciding of numerous lower court and appellate motions, 3) only state law is at issue, 4) the utter lack of evidence that Plaintiffs' interests would not be adequately protected in the state action, and 5) this federal action was filed as a vexatious and bad faith reactive response to the state court's cancellation of the Plaintiffs' Notices of Pendency filed in connection with the state court action.

Finally, based on Plaintiffs' transparent and egregious misconduct in bringing this federal action and the improper purpose for which it was brought, the Defendants should be awarded

2

attorney's fees, expenses and costs for the defense of this lawsuit pursuant to Title 28, U.S.C. §1927.[1]

## II.   FACTS

### A.   The State Case Has Been Litigated Since Plaintiffs Filed Their State Court Action in 2009

On September 18, 2009, the Plaintiffs in this federal case, along with Delphi Capital Management LLC[2], filed the case in Supreme Court, New York County against Pursuit and four additional defendants – Michael Hayden Sanford, Sanford Partners, L.P., MH Sanford & Co., LLC and Wyndclyffe, LLC.[3] A copy of the complaint is annexed as **Exhibit A**[4] to the Akerman Affirmation in Support of Pursuit's Motion to Dismiss.[5] The complaint alleged all state causes of action – breach of contract, breach of fiduciary duty, and constructive trust, claiming that

---

[1] Rule 11 sanctions are not sought on this motion because Rule 11(c) (2) requires such a motion to "be made separately from any other motion." Also, Pursuit is not including in this motion its right under CPLR § 6514(c) for "costs and expenses occasioned by the filing and cancellation [of the Notices of Pendency], in addition to any costs of the action." In cancelling the Notices of Pendency, the Court expressly reserved decision on Pursuit's "request for 'costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action' pursuant to CPLR § 6514(c)" to "be considered at a later time." **Ex. K** at pp. 6-7. As a result of the Plaintiffs' filing of these Notices of Pendency, Pursuit, since July 1, 2015, has been burdened with carrying costs (common costs on these residences, real estate taxes, penalties, interest and related legal expenses) totaling well in excess of $15,000 per month. Pursuit has also been unable to rent its Townhouse property because of the Notice of Pendency and has lost approximately $18,000 per month in rental income it would otherwise have earned. Regarding the Penthouse, the sale contract of $3,000,000 was entered into in 2013, and Plaintiffs' Notices blocked that transaction for at least the past (4) months, an expense (at 9% legal interest) of at least $22,500 per month (not even considering compounding). In addition to Pursuit's litigation costs to defend against Plaintiffs' meritless Federal action, Pursuit, as a direct result of Plaintiffs' Notices, has incurred at least $40,000 - $50,000 per month since Plaintiffs refused to dismiss this action and voluntarily remove Plaintiffs' Notices as Pursuit's counsel urged them to do in a letter of August 3, 2015, discussed *infra.*, p.7. *Lunney & Crocco v. Wolfe*, 579 N.Y.S. 2d 388 (1st Dep't 1992); *Josefsson v. Keller*, 530 N.Y.S.2d 10(2$^{d}$ Dep't 1988); *Tucker v. Mashomack Fish and Game Preserve Club, Inc.*, 606 N.Y.S2d 79 (3rd Dep't. 1993). Following the Court's decision on this motion, Pursuit intends to file its motion for additional sanctions and costs and expenses pursuant to Rule 11 and CPLR § 6514(c).

[2] Discovery showed that Delphi Capital Management LLC was a non-existent entity.

[3] Wyndclyffe, LLC ("Wyndclyffe") owns a Rhinebeck residential property on behalf of Sanford. Plaintiffs also improperly filed a Notice of Pendency upon it, simply to harass Sanford. The Notice blocked the refinance of a balloon mortgage on the property, causing it to file bankruptcy protection last year. Plaintiffs have not alleged any claim or interest whatsoever in Wyndclyffe, as proven by their failure to file a claim against it in the bankruptcy proceedings. Wyndclyffe has no connection to this federal lawsuit and is nowhere referenced in the complaint.

[4] "Ex" refers to Exhibits to the accompanying Akerman Declaration.

[5] Pursuit and the other corporate defendants named in the state lawsuit are wholly owned by Sanford.

Plaintiffs provided money to the defendants "to purchase a condominium unit located at 44 East 67th Street, Apartment PHC, New York, New York 10021 ("PHC") and "3 condominium units at 10 Bedford Street, New York, New York." **Ex. A**, ¶¶12, 15. Pursuit has vigorously contested this allegation. On September 18, 2009, Plaintiffs filed Notices of Pendency against the two Properties. The state summons and complaint were served on Pursuit via the Secretary of State fifty-four days later on November 12, 2009.

Depositions have been taken of all the parties. On January 10, 2013, the Plaintiffs deposed Sanford, **Ex. B**; on March 27, 2014, the defendants, after obtaining Court Orders, finally deposed Norma Knopf, **Ex. C**; and on March 28, 2014, the defendants deposed Michael Knopf, **Ex. D**.

On June 24, 2013 the Plaintiffs moved before the State Supreme Court for summary judgment and to dismiss the Defendants' affirmative defenses and counterclaims. On August 12, 2013, the Supreme Court denied Plaintiffs claims "en toto" and affirmed all of the Defendants' counterclaims and affirmative defenses. **Ex. E**. The Plaintiffs appealed the court's denial of their motion to the Appellate Division, First Department. ("Appellate Division").

On December 11, 2014, the Appellate Division partially reversed the Supreme Court and granted the Plaintiffs' liability claim for breach of contract, but affirmed the Supreme Court's refusal to grant Plaintiffs' summary judgment on their constructive trust claim supporting their Notices of Pendency on the two Properties because they "have not made an evidentiary showing that money damages would be inadequate." See **Ex. F**, p. 77.

On December 23, 2014, in a written Decision and Order that relied upon the recent December 11th Appellate Division decision that monetary damages were adequate, the Supreme Court granted Pursuits' CPLR 6514(a) and (b) motion to cancel the Notices of Pendency on the

4

two Properties. See **Ex. G**. On December 31, 2014, these Notices of Pendency were physically cancelled by the New York County Clerk.

On January 6, 2015, without the Notice of Pendency on the PHC, Pursuit granted the $575,000 mortgage to its other attorneys, Meister, Seelig & Fein LLP ("MSF") only against the PCH to secure the payment of legal fees ("MSF mortgage"). **Ex. H**. No mortgage was ever filed against Bedford Street.

### B.    This Federal Action Was Filed in Response to the State Court's Cancellation of the Earlier Bedford Street and PHC Notices of Pendency

The Plaintiffs appealed the Supreme Court's December 23, 2014 Order of cancellation of the Notices of Pendency. On June 11, 2015, the appeal was orally argued before the Appellate Division, First Department. At the conclusion of the argument the Appellate Division panel stated it would affirm the cancellation of the Notices of Pendency on the two Properties. On July 2, 2015, the Appellate Division entered its Order affirming the cancellation of the Notices of Pendency on two separate grounds. First, it upheld the cancellations relying on its holding that "plaintiffs failed to show that money damages would be inadequate." Second, the Appellate Division held that cancellation "was mandatory pursuant to CPLR 6514(a)" because of Plaintiffs' failure to serve Pursuit with the summons and complaint within 30 days of the filing of the Notices of Pendency, as required by CPLR 6512. See **Ex. I**, p. 22.[6]

On July 1, 2015, the day before the Appellate Division issued its formal opinion and knowing that the Appellate Division would uphold the Supreme Court's decision to cancel the

---

[6] On October 6, 2015, the Appellate Division granted Pursuit's motion for reargument on its motion before the Supreme Court on costs and sanctions and remanded to the Supreme Court to determine the full scope of the costs and sanctions resulting to Pursuit from the filing of the Notices of Pendency. **Ex. J**.

5

Notices of Pendency[7], the Plaintiffs filed this federal action, adding Pursuit's law firm, MSF, as a defendant, and filed new Notices of Pendency on the two Properties based on this action.

The federal Complaint regurgitates the same core allegations as in the state complaint, Complaint, ¶¶8-13, **Ex. L**, and added allegations of fraudulent conveyance based solely on the MSF mortgage that, according to the federal Complaint, "Pursuit has attempted, and is attempting to liquidate the properties it had purchased with the funds borrowed from the Knopfs" such that they will not be "available for the Knopfs to execute upon when they obtain an enforceable judgment." *Id.*, ¶20.

The complaint alleges that "[f]ederal subject matter exists pursuant to 28 U.S.C. 1332(a)(1) based on complete diversity of citizenship since both plaintiffs are citizens and domiciliaries of South Carolina and both defendants are citizen and domiciliaries of New York." Id. at ¶5. At the initial Conference held before this Court on October 9, 2015, Plaintiffs' counsel acknowledged that Plaintiffs had been "residents of South Carolina . . . for over a year." **Ex. M**, p. 2. Thus, the Plaintiffs were residents of South Carolina for at least 9 months before filing the federal complaint.

This Court found in its October 16, 2015 decision that "[t]o all appearances, Plaintiffs have reinstated their Notices and filed this suit in an attempt, in effect, to reverse the state court's decision to cancel the Initial Notices, and to obtain the equivalent of an attachment on the Properties pending judgment." The Court concluded that "[t]his is an improper use of lis pendens." **Ex. K** at 6. The Court also found 1) that there was no basis to file a Notice of Pendency against the Townhouse at 10 Bedford Street, **Ex. K** at 4, 2) that "the Plaintiffs lacked

---

[7] In its opinion of October 16, 2015, cancelling Plaintiffs' Notices of Pendency filed in this case, this Court expressly found that "[a]s of . . . [July 1, 2015] the Plaintiffs were on notice that the Appellate Division intended to uphold the cancellation of the initial Notices." **Ex. K** at 2-3.

good faith in filing the Notice" against the PHC for various reasons including the fact that "the fraudulent conveyance claim is lodged against MSF, and the Plaintiffs do not suggest that MSF lacks the capacity to repay the total amount of the alleged fraudulent conveyance," and 3) that "[t]he Plaintiffs claim to a protectable interest in both Properties depends upon the success of their state court claims." *Id.* at 5-6.[8]

A week after the filing of this federal action, the plaintiffs moved before the State Supreme Court for a pre-judgment attachment pursuant to CPLR 6201 prohibiting Pursuit "from [among other things] transferring" the two Properties. **Ex. O**, *see also* **Ex. N**. On July 7, 2015, Plaintiffs obtained an *ex parte* Temporary Restraining Order from the Supreme Court restraining the sale of the two Properties pending argument on Plaintiffs' motion for attachment. **Ex. O**. On July 16, 2015, Plaintiffs' motion for a pre-judgment attachment was argued before the Supreme Court. **Ex. P.** Plaintiffs' counsel never disclosed to the Supreme Court he had already filed two additional Notices of Pendency on the two Properties through this federal lawsuit, a fact unknown at the time to Pursuit, which had not yet been served in this action. As of now and at the time of the motion, Plaintiffs have not obtained an enforceable judgment against Pursuit and are awaiting an inquest on a damages hearing.[9]

On July 23, 2015, the Supreme Court in an opinion read into the record denied Plaintiffs' motion for a pre-judgment attachment on the two Properties, finding that Plaintiffs had made an insufficient showing under CPLR 6312(a) because their affidavit in support of their motion is

---

[8] This Court also found that "Plaintiffs have not explained why they cannot now and did not previously raise before the state court any arguments made here to support the refiling of a notice so recently cancelled by the state court." *Id* at 5. Plaintiffs, however, were not permitted under state law to refile the notices once they were cancelled. The New York Court of Appeals has enunciated the black letter law "that an expired or cancelled notice of pendency may not be refiled on the same cause of action or claim." *In re Sakow*, 97 N.Y.2d 436, 443 (2002), CPLR 6516(c).

[9] Likewise, Pursuit will be moving the lower court to calculate its costs and expense incurred due to the improper Notices of Pendency in the state case. There is a reasonable likelihood that Pursuit's millions of dollars in damages it has incurred from 2009 to 2015 will substantially offset any and all liability claims Plaintiffs presently have against Pursuit.

"conclusory," "speculative" and "not sufficient." **Ex. Q**, 12-14. Plaintiffs appealed this order to the Appellate Division. On November 12, 2014, the Appellate Division denied Plaintiffs motion for a prejudgment attachment or "a preliminary injunction enjoining defendants from transferring, mortgaging, or otherwise impairing the value of the subject properties pending hearing and determination of the aforesaid appeal." **Exhibit R.**

On August 3, 2015, Defendant's counsel sent Plaintiffs' counsel a letter stating that this federal action is "meritless," is barred by the *Rooker-Feldman* doctrine, and that if Plaintiffs "continue to pursue the matter," Pursuit would "seek all available legal remedies, including sanctions pursuant to F.R.Civ.P 11(c)." **Ex. S**. The letter also addressed the improper Notices of Pendency that were filed simultaneously with the federal complaint in this case:

> Moreover, the notices of pendency that you, on behalf of your clients, filed on Pursuit's wholly owned properties on July 1, 2015 are in direct violation of NYS CPLR §6516, and we demand that you cause them to be immediately cancelled in the office of the NY County Clerk. There is no legal basis under your suit for these notices, and my client shall hold your law firm and your clients responsible for any damages it suffers as a result, including but not limited to, any and all costs, including legal fees, associated with having these notices vacated, if you do not do so voluntarily by the close of business this Wednesday, August 5, 2015.

Plaintiffs' counsel never responded to this letter. Akerman Affirmation, ¶20.

### III.   ARGUMENT

#### A.   The Complaint Should Be Dismissed for Lack of Jurisdiction Pursuant to the *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is predicated on two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), that "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). As the Second Circuit has

recognized, "[u]nderlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Id.* at 85. This includes "federal suits challenging interlocutory state judgments." *Id* at 89. *Alroy v. City of New York Law Department*, 69 F.Supp.3d 393, n.14 (S.D.N.Y. 2014) ("The Second Circuit recognized that the *Rooker-Feldman* doctrine may apply to bar federal suits challenging interlocutory state judgments").

As set forth above, this Court has already found that "[t]o all appearances, Plaintiffs have reinstated their Notices and filed this suit in an attempt, in effect, to reverse the state court's decision to cancel the Initial Notices, and to obtain the equivalent of an attachment on the Properties pending judgment," and concluded that "[t]his is an improper use of lis pendens." **Ex. K** at 6. Plaintiffs' filing of this lawsuit is not only an improper use of *lis pendens,* but it also violates the *Rooker-Feldman* doctrine because this lawsuit was filed "to reverse the state court's decision to cancel the Initial Notices." Here, there was a final interlocutory judgment from the Appellate Division cancelling the initial two Notices of Pendency. That there was not a claim against MFS in the state court action for fraudulent conveyance has no bearing on the application of the *Rooker-Feldman* doctrine in this case. As the Second Circuit stated, "[j]ust presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state court judgment reversed." *Hoblock* at 86. Naming MFS in this federal lawsuit was simply a ruse for the Plaintiffs to circumvent the final decision of the state court on the cancellation of the Notices of Pendency. Accordingly, the complaint should be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine.

### B. Even If Jurisdiction Exists, This Court Should Abstain from Exercising It

In determining whether abstention is appropriate where there is concurrent jurisdiction between state and federal cases, the Supreme Court has set forth six factors to be considered by the federal court. These factors are:

> whether the jurisdiction is over any res or property; 2) the inconvenience of the federal forum; 3) the avoidance of piecemeal litigation; 4) the order in which jurisdiction was obtained; 5) whether federal or state law supplies the rule of decision; and 6) whether the state court proceeding will adequately protect the rights of the party seeking federal jurisdiction.

*Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 818, (1976); *Garcia v. Tamir*, 1999 WL 587902 *3 (S.D.N.Y. Aug. 4, 1999); *Solkav Solartechnik, GES.M.B.H. v. Besicorp Group, Inc.*, 1996 WL 282066 *2 (S.D.N.Y. May 28, 1996) As the Supreme Court instructed, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. *Colorado River* at 818-19.

The Supreme Court further instructed in *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 16 (1983) that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Therefore, "the weight to be given to any one factor may vary greatly from case to case." *Id.* In *Cone*, the Supreme Court also recognized "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River* – has considerable merit." *Id.* at 17, n. 20.

While there is no issue with the first two factors, res or property and inconvenience of the federal forum, the other factors militate strongly for abstention in this case. First, as to the avoidance of piecemeal litigation, "[t]he actions in state and federal court involve the identical issues" as demonstrated by a comparison of the state and federal complaints. *Solkav* at *2. Moreover, "because the cause of action in the two proceedings arise from the same set of events, questions of issue preclusion, will be likely to arise among the parties that are involved in both actions" and "[t]his will result in additional litigation related to the preclusion issue." *Garcia* at *5. Indeed, this case has already resulted in the re-litigation of the *lis pendens* issue that was briefed and argued extensively before the New York Supreme Court and the Appellate Division.

Second, the order and timing that jurisdiction was obtained is critical here. The Plaintiffs filed their suit in state court in 2009, approximately 6 years before filing this federal action. Most of the issues have been litigated and are currently being litigated in the state court action that has been in progress for the past 6 years during which time discovery has been completed and various motions have been decided. As in *Garcia* at *7, "[i]n this proceeding, by contrast, the progress consists merely of the complaint and this motion to dismiss."

As to whether federal or state law supplies the rule of decision, all of the Plaintiffs' claims as well as the Defendants' counterclaims are traditional state law claims for breach of contract, breach of fiduciary duty, fraudulent conveyance and tortious interference with contract. There are no federal claims in the state or federal action.

There also can be no dispute that the state court proceedings will adequately protect the rights of the Plaintiffs. *Solkav* at *2 ("There is no suggestion that Solkav's rights will not adequately be protected in the state court proceeding"). Again, "[t]his is evidenced by the fact that plaintiffs initially chose the state forum for litigation of their claims." *Garcia* at *8. As the

Plaintiff conceded at the October 11, 2015 conference with this Court, the Appellate Division has granted them summary judgment on their contract claim.

Finally, there is the additional factor recognized by the Supreme Court in *Cone* that the vexatious or reactive nature of the federal lawsuit "may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Cone* at 16, n. 20, *see also, Garcia* at *8. This fact is fully applicable here. There is no question, as this Court has already found, that the federal lawsuit and the resulting Notices of Pendency were filed "in an attempt, in effect, to reverse the state court's decision to cancel the Initial Notices, and to obtain the equivalent of an attachment on the Properties pending judgment," and concluded that "[t]his is an improper use of lis pendens." **Ex. K** at 6.

The timing of this lawsuit tells the story. The action was not filed until after Plaintiffs learned that the Appellate Division had affirmed the Supreme Court's decision to cancel the Notices of Pendency on the two Properties. That Plaintiffs' motive in filing this federal lawsuit was to circumvent the state court ruling is further evidenced by the fact that diversity jurisdiction existed for at least 9 months, and yet the Plaintiffs chose not to file this federal action until the state court cancelled the Notices of Pendency. Plaintiffs' bad faith and improper use of this lawsuit by itself is a sufficient ground upon which to dismiss this action. *Garcia* at *8 ("the present action in federal court was filed in reaction to the state court's dismissal of . . . [two parties] from the state court").

**C.    Sanctions Should Be Awarded against the Plaintiffs' Attorney Pursuant to Title 28, U.S.C. §1927**

Title 28, U.S.C. §1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court

12

> to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As the Second Circuit has stated, "[b]y its terms, §1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *U.S. v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). Thus, "[b]ad faith is the touchstone of an award under this statute," and "'an award under §1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay,'" *Id., citing Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Sanctions are also warranted in the precise circumstances presented here, when a separate federal action is filed for an improper purpose. *Garcia* at *9.

Here, the Court has already found that "[t]o all appearances, Plaintiffs have reinstated their Notices and filed this suit in an attempt, in effect, to reverse the state court's decision to cancel the Initial Notices, and to obtain the equivalent of an attachment on the Properties pending judgment," and concluded that "[t]his is an improper use of lis pendens." **Ex. K** at 6. The Court also found that there was no basis to file a Notice of Pendency against the Townhouse at 10 Bedford Street, **Ex. K** at 4, and that "the Plaintiffs lacked good faith in filing the Notice" against the PHC. *Id.* at 5-6.

In addition, on August 3, 2015, Defendant's counsel sent a letter to Plaintiffs' counsel warning him that Pursuit would seek sanctions, including attorney's fees and costs, if he did not vacate the Notices of Pendency "voluntarily by the close of business . . . Wednesday, August 5, 2015." **Ex. R**. Plaintiffs' counsel never responded to that letter.

Accordingly, the Court should award sanctions against Plaintiffs' attorney requiring him to reimburse Pursuit for its attorney's fees, expenses and costs expended in this action.

## IV. CONCLUSION

For all of the reasons stated above, the Court should dismiss this action and award Pursuit against the Plaintiffs' attorney all attorney's fees and costs and expenses of defending this action.

Dated: New York, New York
November 20, 2015

DORSEY & WHITNEY LLP

By: _____
Nathaniel H. Akerman
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200

*Attorneys for Defendant*
*Pursuit Holdings (NY), LLC*