UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NORMA KNOPF and MICHAEL KNOPF,

                            Plaintiffs,

      -against-

MEISTER SEELIG & FEIN, LLP and PURSUIT
HOLDINGS, LLC,

                           Defendants.

-------------------------------------------------------------------X

Case No.15 Civ. 05090(DLC)

---

## DEFENDANT MEISTER SEELIG & FEIN LLP'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500
*Attorneys for Defendant*
*Meister Seelig & Fein LLP*

[999-310/4803687/1]

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

ALLEGATIONS OF THE COMPLAINT ........................................................... 2

ARGUMENT ...................................................................................................... 6

    I.   STANDARD OF REVIEW ...................................................................... 6

    II.  THE MORTGAGE FROM PURSUIT TO MSF WAS NOT A FRAUDULENT CONVEYANCE ................................................................................... 7

        A.  PURSUIT WAS NOT AND IS NOT INSOLVENT AS DEFINED BY SECTION 271 OF THE NEW YORK DEBTOR CREDITOR LAW ...................................... 8

        B.  THE MORTGAGE WAS GIVEN FOR FAIR CONSIDERATION AS DEFINED BY SECTION 272 OF THE NEW YORK DEBTOR CREDITOR LAW ............ 10

        C.  EVEN IF THE COURT WERE TO FIND AN ISSUE OF FACT REGARDING INSOLVENCY OR FAIR CONSIDERATION, THE CLAIM FOR FRAUDULENT CONVEYANCE SHOULD BE DISMISSED ........................... 12

            1.  Plaintiffs Have Not Alleged The Elements Of A Claim Under Section 273 ........................................................................ 12

            2.  Plaintiffs Claim Under Section 273-a Is Not Ripe ......................... 13

            3.  Plaintiffs Allegation Of Unreasonably Small Capital Is Insufficient To State A Claim Under Section 274 ......................... 13

            4.  Plaintiffs Allegation That Pursuit Knew It Was Likely To Incur Debts Beyond Its Ability To Pay Is Insufficient To State A Claim Under Section 275 ................................................................ 14

            5.  Plaintiffs Allegation Of Actual Intent Is Insufficient To State A Claim Under Section 276 ........................................................ 15

CONCLUSION ................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*17 Vista Assocs. v. City of New York,*
No. 95 CIV. 3870 (DLC), 1996 WL 197762 (S.D.N.Y., Apr. 23, 1996) ............................ 2 n.1

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................... 7, 12, 14, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................. *passim*

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) ............................................................................. 2 n.1

*Chen v. New Trend Apparel, Inc.,*
8 F. Supp. 3d 406 (S.D.N.Y. 2014) ...................................................................... 9, 11

*Gala Enters., Inc. v. Hewlett Packard Co.,*
989 F. Supp. 525 (S.D.N.Y. 1998) ........................................................................... 11

*Gindi v. Silvershein,*
No. 93 Civ. 8679 (LLS), 1995 WL 347397 (S.D.N.Y., June 8, 1995) ......................... 13, 15, 16

*Grace v. Bank Leumi Trust Co. of NY,*
443 F.3d 180 (2d Cir. 2006) ................................................................................... 13

*HBE Leasing Corp. v. Frank,*
48 F.3d 623 (2d Cir. 1995) ............................................................................... 10-11

*In re Sharp Int'l Corp.,*
302 B.R. 760 (E.D.N.Y. 2003) ................................................................................ 10

*In re Successor Borrower Servs., LLC,*
489 B.R. 336 (Bankr. W.D.N.Y. 2013) ...................................................................... 12

*Int'l Audiotext Network, Inc. v. Am. Tel & Tel. Co.,*
62 F.3d 69 (2d Cir. 1995) ................................................................................... 2 n.1

*Jianjun Lou v. Trutex, Inc.,*
872 F. Supp. 2d 344 (S.D.N.Y. 2012) ..................................................................... 2 n.1

*Lippe v. Bairnco Corp.,*
249 F. Supp. 2d 357 (S.D.N.Y. 2003) ......................................................................... 16

*Lundt v. City of New York,*
  No. 12 Civ. 1737(DLC), 2013 WL 5298458 (S.D.N.Y., Sept. 20, 2013)............................ 2 n.1

*McCarty v. Nostrand Lumber Co.,*
  232 A.D. 63 (2d Dep't 1931) ........................................................................................... 9

*Morgan Guar. Trust Co. v. Hellenic Lines Ltd.,*
  621 F. Supp. 198 (S.D.N.Y. 1985)................................................................................ 8, 9

*Pfeiffer v. Integrated Fund Servs., Inc.,*
  371 F. Supp. 2d 502 (S.D.N.Y. 2005)............................................................................. 6

*Ray v. Ray,*
  108 A.D.3d 449, 970 N.Y.S.2d 9 (1st Dep't 2013)........................................................ 15, 18

*RTN Networks, LLC v. Telco Grp., Inc.,*
  126 A.D.3d 477 (N.Y. App. Div. 2015)........................................................................ 10, 16

*Shabazz v. Cuomo,*
  1996 WL 445363 (S.D.N.Y., Aug. 7, 1996) .................................................................. 2 n.1

*Sheppard v. Beerman,*
  18 F.3d 147 (2d Cir. 1994)............................................................................................. 6

*Sira v. Morton,*
  380 F.3d 57 (2d Cir. 2004)............................................................................................ 2 n.1

*Toliver v. City of New York,*
  Nos. 10 Civ. 3165(PAC)(JCF), 10 Civ. 6619(PAC)(JCF),
  2011 WL 4964919 (S.D.N.Y. Sept. 15, 2011) ............................................................. 2 n.1

*Wilson v. Wilder Balter Partners, Inc.,*
  No. 13-CV-2595 KMK, 2015 WL 685194 (S.D.N.Y. Feb. 17, 2015).................................. 7, 14

*Xuchang Rihetal Human Hair Goods Co., Ltd, v. Hanyu Int'l USA Inc.,*
  No. 00 Civ. 5585(DLC), 2001 WL 8438 (S.D.N.Y., Jan. 3, 2001) ............................................ 6

## Statutes

N.Y. C.P.L.R. 273 *et seq* (McKinney)............................................................................ 7

N.Y. C.P.L.R.  274 (McKinney) .................................................................................. 7, 14

N.Y. C.P.L.R.  275 (McKinney) ...................................................................................... 7

N.Y. C.P.L.R.  276 (McKinney) ...................................................................................... 7

N.Y. Debt. & Cred. Law § 271 (McKinney) ............................................................... 8

N.Y. Debt. & Cred. Law § 272 (McKinney) ................................................... 9, 10, 11

N.Y. Debt. & Cred. Law § 273 *et seq* (McKinney) ............................................ *passim*

N.Y. Debt. & Cred. Law § 274 (McKinney) ....................................................... *passim*

N.Y. Debt. & Cred. Law § 275 (McKinney) ....................................................... *passim*

N.Y. Debt. & Cred. Law § 276 (McKinney) ....................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 6

Fed. R. Civ. P. 12(c) ........................................................................................... 1, 2 n.1, 6

Fed. R. Civ. P. 9(b) .......................................................................................... *passim*

**Other Authorities**

G. Glenn, *Fraudulent Conveyances and Preferences* § 289 (1940) ............................. 10

Defendant Meister Seelig & Fein LLP ("MSF") submits this memorandum of law in support of its motion, pursuant to Federal Rules of Civil Procedure 12(c), seeking dismissal of the first claim of relief, for fraudulent conveyance in violation of Article 10 of the New York Debtor and Creditor Law, and, as this is the only claim against MSF, seeking dismissal of the action against MSF, and such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

This current action is the latest chapter in a tortured litigation that has lasted more than six years between plaintiffs Norma and Michael Knopf ("Plaintiffs" or "the Knopfs"), on the one hand, and defendant Pursuit Holdings, LLC ("Pursuit") and Pursuit's sole member, Michael Hayden Sanford ("Sanford").

In 2009, the Knopfs and a related entity filed suit the Supreme Court, State of New York, County of New York against Pursuit, Sanford and other entities owned by Sanford, titled *Knopf et al. v. Sanford et al.*, Index No. 113227/2009 (the "State Court Action"). The central tenant of the Knopfs' litigation strategy is blocking Pursuit's access to its primary source of cash; the equity in its real properties. In so doing, the Knopf's aim to deprive Pursuit of its ability to retain – and pay for – competent counsel.

At the outset of the State Court Action, the plaintiffs filed notices of pendency against several properties owned by the various defendants, including two properties owned by Pursuit. Eventually the notices of pendency were ruled to be improper by the state court and thereafter cancelled by the New York County Clerk. As soon as that occurred, the Knopf's brought a motion for a prejudgment attachment, which motion the state court denied. An appeal of that decision is pending.

This action is just the latest variation on the same theme: here the Knopfs seek to prevent Pursuit from paying MSF for the work it performed for over a year in heated litigation. But the Knopf's fraudulent conveyance claim is baseless. Pursuit is not insolvent and there was fair consideration for the mortgage. Insolvency and a transfer lacking of fair consideration are both essential elements of a fraudulent conveyance action under New York Law (the court's diversity jurisdiction is the Knopf's sole basis for choosing a Federal forum). Accordingly, the Knopf's sole claim in this action, a fraudulent conveyance claim under New York law, fails and, as against MSF, Knopf's Complaint should be dismissed.

## ALLEGATIONS OF THE COMPLAINT[1]

The Knopfs commenced the State Court Action in 2009. Am. Compl. ¶ 15. When the State Court Action was commenced, the Knopfs filed notices of pendency against several

---

[1] The majority of the facts set forth in this memorandum are taken from Plaintiffs' Amended Complaint, a copy of which is annexed to the Declaration of Howard S. Koh, dated November 20, 2015 ("Koh Decl.") as **Exhibit 1** and cited herein as "Am. Compl. ¶ __" and are assumed to be true for purposes of this motion only. Other facts are derived from the additional documentary evidence attached as exhibits to the Koh Decl. The majority of these documents were filed in the State Court Action, specifically nine (9) Decisions and Orders and two (2) notices of pendency. This Court can take judicial notice of these documents and consider them on a motion pursuant to Federal Rules of Civil Procedure 12(c). *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 (S.D.N.Y. 2012) (taking judicial notice of state court order on a motion to dismiss); *Toliver v. City of New York*, Nos. 10 Civ. 3165(PAC)(JCF), 10 Civ. 6619(PAC)(JCF), 2011 WL 4964919, at *3 (S.D.N.Y., Sept. 15, 2011) ("federal courts are empowered to take judicial notice of state court records and decisions."); *17 Vista Assocs. v. City of New York*, No. 95 CIV. 3870 (DLC), 1996 WL 197762 (S.D.N.Y., Apr. 23, 1996) (allowing consideration of state court opinions on a motion to dismiss and citing several cases). The other document attached to the Koh Aff. is a retainer agreement referenced in paragraph 36 of the Amended Complaint. Documents that are referenced in a complaint, even if not attached thereto, may be considered by the Court on a motion to dismiss. *Lundt v. City of New York*, No. 12 Civ. 1737(DLC), 2013 WL 5298458 (S.D.N.Y., Sept. 20, 2013); *Shabazz v. Cuomo*, No. 93 CIV. 7692 DLC, 1996 WL 445363, at *2 (S.D.N.Y., Aug. 7, 1996). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect' which renders the document integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), *citing Int'l Audiotext Network, Inc. v. Am. Tel & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). *See also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (allowing defendant to include on its motion to dismiss a document not referenced in the complaint because it was integral to an element of the claim being alleged by the plaintiff). Here, the Amended Complaint makes a negative reference to the retainer agreement stating that there is no "contract to perform fixed and definite agreed-upon legal services for a specific duration of time" and relies on this allegation for a required element of its claim, making this reference integral to the Amended Complaint.

properties owned by the various defendants, including two against the two properties owned by Pursuit. Copies of the notices of pendency are attached to the Koh Decl. as **Exhibit 2**.

MSF began representing Pursuit in late July, 2014. *See* Summary Statement on Application for Expedited Service and/or Interim Relief dated July 31, 2014, requesting an enlargement of time to file a brief in opposition to an appeal, attached to the Koh Decl. as **Exhibit 3**. Contrary to Plaintiffs' contention that the services provided by MSF to Pursuit were limited and "obviously far less than $575,000" (Am. Compl. ¶ 27), the many decisions and orders issued by the various state courts involved in the State Court Action show that MSF's representation of Pursuit over the course of more than a year was extensive.

Nine (9) substantive orders were issued by the state courts during the course of MSF's thirteen month representation of Pursuit, each one requiring MSF to prepare papers and appear at oral argument. In connection with the initial above-referenced appeal, MSF prepared a lengthy Opposition Brief and Supplemental Record on Appeal, and represented Pursuit at oral argument. A copy of the Appellate Division's December 11, 2014 Decision and Order on that appeal is attached to the Koh Decl. as **Exhibit 4**. While that appeal was pending, MSF moved before the Supreme Court, on Pursuit's behalf, to cancel the aforementioned notices of pendency, and represented Pursuit at oral argument. MSF was successful. A copy of the Supreme Court's December 23, 2014 Decision and Order granting Pursuit's motion to cancel the notices of pendency is attached to the Koh Decl. as **Exhibit 5**.

MSF continued to represent Pursuit when the Knopfs moved for interim relief in the New York Supreme Court, Appellate Division, First Department, on January 8, 2015 by making an appearance before Justice Acosta. *See* Summary Statement on Application for Expedited Service and/or Interim Relief dated January 8, 2015, requesting a stay of Supreme Court's

December 23, 2014 Decision and Order pending appeal, attached to the Koh Decl. as **Exhibit 6**. MSF represented Pursuit in the briefing of that motion before the Appellate Division, which issued a Decision and Order on February 17, 2005. *See* Koh Decl. **Exhibit 7**.  On behalf of Pursuit, MSF then moved for reargument, which motion was granted on April 2, 2015.  A copy of the Appellate Division's April 2, 2015 Decision and Order is attached to the Koh Decl. as **Exhibit 8**. MSF represented Pursuit on the underlying appeal of the decision to cancel the notices of pendency, including at oral argument, which decision was upheld by the Appellate Division in a Decision and Order dated July 2, 2015. *See* Koh Decl. **Exhibit 9**.

While that appeal was pending, apparently to hedge its bets, Plaintiffs simultaneously filed a motion at the nisi prius level seeking severance of its breach of contract claims and immediate entry of judgment on those claims or, in the alternative, a prejudgment attachment and, in connection therewith, plaintiffs sought, and obtained, a temporary restraining order. *See* Koh Decl. **Exhibit 10**.  MSF represented Pursuit in connection with that temporary restraining order.  MSF also prepared and filed opposition papers to the underlying motion for severance and entry of a judgment and represented Pursuit at oral argument and succeeded in defeating that motion.  MSF was successful in preventing immediate entry of judgment. *See* Decision and Order dated July 23, 2015, attached to the Koh Decl. as **Exhibit 11**.

Plaintiffs appealed the July 23, 2015 Decision and Order, and, in connection therewith, sought interim relief from the Appellate Division, requiring another appellate court appearance by MSF and preparation of yet another set of opposition papers. *See* Koh Decl. **Exhibit 12**.

Contrary to the allegations of the Amended Complaint MSF provided fair value for the mortgage Pursuit gave to MSF. Although the Amended Complaint alleges that there was no "advance in the form of a contract to perform fixed and definite agreed-upon legal services for a

specific duration of time," Am. Compl. ¶ 36, there in fact was such a contract. *See* the retainer agreement between Pursuit and MSF, dated July 29, 2014 as amended on January 6, 2015, a copy of which is attached to the Koh Decl. as **Exhibit 13**. The original July 29, 2014 retainer agreement specifically provides for the granting of a mortgage by Pursuit to MSF. Because the notices of pendency plaintiffs had placed on all of Pursuit's properties prevented Pursuit from accessing its substantial equity in these properties or otherwise obtaining financing, in order to obtain the legal services of MSF, Pursuit agreed to provide MSF with a mortgage on one of its properties in the amount of $700,000. *Id*. In the end MSF decided that the fee for its services would likely be less than $700,000 and therefore MSF took a mortgage on Pursuit's property in the amount of $575,000.   Am. Compl. ¶ ¶ 27, 30.

The Knopfs' allege that at the time the MSF mortgage was granted, *if* the Knopfs had been able to obtain a judgment (which, as set forth in the July 23, 2015 Decision and Order – **Exhibit 11** – they were not), such judgment *would have been* for approximately $7.85 million. Am. Compl. ¶ 32. The Knopfs allege that this amount is "far in excess" of the salable value of the properties owned by Pursuit. Am. Compl. ¶ 33. This allegation, however is belied by the admission by the Knopfs' counsel earlier this year in the related State Court Action that the properties owned by Pursuit have "doubled" in value since the time they were purchased by Pursuit. *See* Letter dated February 11, 2015 by Eric Berry, Esq. to the Clerk of the Court, Supreme Court of the State of New York, Appellate Division, First Department attached to the Koh Decl. as **Exhibit 14**. As explained in the affirmation of Stephen B. Meister filed with the same court on February 19, 2015, that valuation means the Properties are worth over $11 million:

> By Plaintiffs-appellants' own estimation, the value of the 67th Street and Park Avenue penthouse (PHC) and West Village

townhouse property (10 Bedford) have at least "doubled" in value since respondent purchased both more than nine (9) years ago. Respondent signed a contract to purchase PHC in 2005 and closed in early 2006 for approximately $2.1 million. Respondent signed a contract to buy the 10 Bedford units and closed their purchase in mid 2006 for approximately $3.6 million. Accordingly, by plaintiffs-appellants own estimation, these properties are currently worth approximately $11.4 million, before closing costs. These properties are largely unencumbered, the mortgages thereon not exceeding $1,000,000 in the aggregate.

*See* Affirmation of Stephen B. Meister dated February 19, 2015, attached to the Koh Decl. as

**Exhibit 15** (without exhibits). Mr. Berry did not dispute this calculation in his affirmation filed

in opposition. *See* Affirmation of Eric Berry dated March 2, 2015 attached to the Koh Decl. as

**Exhibit 16** (without exhibits).

The Knopfs also allege "Pursuit was insolvent on January 6, 2015." Am. Compl. ¶39.

This allegation is made without any support.

## ARGUMENT

### I.   STANDARD OF REVIEW

The standard for deciding a motion to dismiss under Federal Rule of Civil Procedure

Rule 12(c) is the same as that for a motion to dismiss brought under Rule 12(b)(6). *Sheppard v.*

*Beerman*, 18 F.3d 147, 150 (2d Cir. 1993); *Pfeiffer v. Integrated Fund Servs., Inc.* 371 F. Supp.

2d 502, 505 (2005); *Xuchang Rihetal Human Hair Goods Co., Ltd, v. Hanyu Int'l USA Inc.*, No.

00 Civ. 5585(DLC), 2001 WL 8438 (S.D.N.Y., Jan. 3, 2001)

While a complaint attacked by a motion to dismiss for failure to state a claim upon which

relief can be granted does not need detailed factual allegations, a plaintiff must provide the

grounds of her entitlement to relief -- not just labels and conclusions; a formulaic recitation of

the elements of a cause of action will not do. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545

(2007) (internal citations omitted). A complaint need not provide detailed factual allegations but

the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*
To overcome a motion to dismiss, a complaint must plead "enough facts to state a claim to relief
that is plausible on its face." *Twombly*, 550 U.S. at 547.

Courts will not assume that mere conclusions of law are true for the purpose of deciding a
motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Rather, the Court must determine
whether the claim has "facial plausibility," meaning that the "plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Moreover, a mere "formulaic recitation of these elements of a cause of action will not
do." *Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595 KMK, 2015 WL 685194, at *5
(S.D.N.Y. Feb. 17, 2015) (citing *Twombly*, 550 U.S. at 555 (2007)).  Plaintiffs are required to
allege some specific factual bases for those conclusions or face dismissal of their claims. *Id.*; *see
also Ashcroft*, 556 U.S. at 664.  The "[f]actual allegations must be enough to raise a right to relief
above the speculative level on the assumption that all of the complaint's allegations are true."
*Twombly*, 550 U.S. at 545.

## II.  THE MORTGAGE FROM PURSUIT TO MSF WAS NOT A FRAUDULENT CONVEYANCE

Although inartfully drafted, Plaintiffs appear to be alleging, within a single claim, that the
defendants have violated New York Debtor and Creditor Law § 273, or § 273-a, or § 274, or §
275, or § 276.[2]  There are two basic elements to most claims under the New York Debtor and
Creditor Law – insolvency and lack of fair consideration.  Neither of those elements are -- or can

---

[2] The Amended Complaint makes reference to CPLR 273, CPLR 273-a, CPLR 274, CPLR 275 and CPLR 276. The
heading of the claim for relief, however, states that the claim is brought under Article 10 of the New York Debtor
and Creditor Law.  For purposes of this motion, and to spare the Court unnecessary repleading, MSF will presume
that Plaintiffs intended those references to all be to DCL, rather than the CPLR.

be – properly alleged here.  In addition, Plaintiffs do not have a judgment against Pursuit, and for the sections of New York's Debtor-Creditor Law that require intent, intent has not been alleged with sufficient particularity.  For all of these reasons, as set forth in detail below, MSF's motion to dismiss should be granted.

## A. PURSUIT WAS NOT AND IS NOT INSOLVENT AS DEFINED BY SECTION 271 OF THE NEW YORK DEBTOR CREDITOR LAW

New York Debtor Creditor Law § 271 defines insolvency as arising "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  By this definition it is clear that insolvency is based on the value of the assets, not cash flow.  Indeed "[c]ash flow is not a factor, and an 'inability to pay current obligations as they mature does not show insolvency.'" *Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*, 621 F. Supp. 198, 220 (S.D.N.Y. 1985) (refusing to set aside mortgages under New York Debtor and Creditor Law).  With regard to the allegation of insolvency, the Amended Complaint alleges as follows:

> (vi) Pursuit's Insolvency
>
> 32. As of June 29, 2015, the amount due to from Pursuit to the Knopfs under the two real estate loan agreements, including contractual and statutory interest, was $8,099,880.56. As of January 6, 2015, the amount due from Pursuit to the Knopfs was approximately $7.85 million.
>
> 33. In addition to its indebtedness to the Knopfs, Pursuit has incurred numerous property tax liabilities resulting in liens on both properties. Pursuit also owes attorneys fees to the Law Offices of James A. Prestiano, owes condominium fees on the East 67th Street property, and on information and belief owed attorneys fees to Corbally, Gartland and Rappleyea, LLP. All these debts were in existence on January 6, 2015. Because Pursuit has allowed the condition of the properties to substantially decline, the amount due

to the Knopfs is far in excess of the saleable value of Pursuit's properties.

By these allegations, Plaintiffs have stated that Pursuit has certain debts, only some of which Plaintiffs quantify.  Plaintiff has also stated that certain debts of Pursuit that have become due have not been paid. *Plaintiffs have not alleged that Pursuit cannot pay these debts*.  At most, there is an inference in these allegations that Pursuit lacks the cash to presently pay tax liens.  A cash flow or temporary liquidity problem, however, is not the same as insolvency.  "Inability to pay current obligations as they mature does not establish insolvency." *McCarty v. Nostrand Lumber Co.*, 232 A.D. 63, 65 (2d Dep't 1931).  *See also*, *Morgan Guar., supra*, at 220; *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 445 (S.D.N.Y. 2014) ("The DCL's measure of insolvency focuses on companies in serious overall financial trouble, as opposed to companies experiencing a temporary lack of liquidity.").

More important, Plaintiffs have not alleged the value of Pursuit's assets and thus *they have not, and cannot, allege that the present fair market value of Pursuit's assets are less than its debts, as is required by the statute.*    Because of the Amended Complaint's missing information concerning Pursuit's assets and liabilities, Plaintiffs' allegation of insolvency simply is not plausible.[3] As such, it fails far below the standard required by *Iqbal* and *Twombly* and, therefore, to the extent the claim for fraudulent conveyance is brought under Sections 273, 274 or 275 of the New York Debtor and Creditor Law, it should be dismissed as a matter of law.

---

[3] Moreover, Plaintiffs have already admitted that Pursuit's assets are worth over $11 million (*see* Koh Decl. Exhibits 14-16).

### B. THE MORTGAGE WAS GIVEN FOR FAIR CONSIDERATION AS DEFINED BY SECTION 272 OF THE NEW YORK DEBTOR CREDITOR LAW

Regardless, the mortgage was granted for fair consideration.  New York Debtor Creditor Law Section 272 provides the definition of "fair consideration."

Fair consideration is given for property, or obligation,

a.  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

New York's Debtor Creditor Law sections 273, 273-a, 274 and 275 all required a plaintiff to allege the consideration given to the transferee was not fair. When alleging that the consideration was not fair, "Plaintiff's 'mere belief' that [defendant] transferred its assets without fair consideration is insufficient." *RTN Networks, LLC v. Telco Grp., Inc.*, 126 A.D.3d 477, 478, 5 N.Y.S.3d 80 (1st Dep't 2015).  Moreover, a conveyance is not lacking in fair consideration just because it favors one creditor over another. "If there is one point more ungrudgingly accepted than others, it is that a preferential transfer does not constitute a fraudulent conveyance." *In re Sharp Intern. Corp.*, 302 B.R. 760, 780 (E.D.N.Y. 2003), *quoting* G. Glenn, *Fraudulent Conveyances and Preferences* § 289 (1940).

As the definition of "fair consideration" in DCL § 272 makes clear, even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because the basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them.

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995) (internal quotations omitted).

Plaintiffs allege a lack of fair consideration because the services provided by MSF to Pursuit were limited and "obviously far less than $575,000" (Am. Compl. ¶ 27) and because there was no "advance in the form of a contract to perform fixed and definite agreed-upon legal services for a specific duration of time." Am. Compl. ¶ 36. In fact, there was such a contract. Koh Aff. Exhibit 13. And, as detailed in the Allegations of the Amended Complaint section *supra*, MSF's services were extensive and successful. Moreover, when determining whether fair consideration was given for the transfer,

> neither mathematical precision nor a penny-for-penny exchange is required. Rather the assessment of fair equivalent value requires a court to compare the rough values of what was given and what was received in exchange. Court have also tended to recognize an element of reasonableness as inherent in the meaning of fair equivalent value.

*Chen*, 8 F. Supp. 3d at 448-49 (internal citations and quotations omitted).

Based on this principle of reasonableness, Courts have found transfers to secure estimations of legal fees to be valid and not fraudulent conveyances. For example, in *Gala Enters., Inc. v. Hewlett Packard Co.*, 989 F. Supp. 525, 529 (S.D.N.Y. 1998) the court found a transfer of $500,000 to a law firm as a flat fee at the outset of representation on a criminal matter was not a fraudulent conveyance "given the amount of time that the Firm reasonably could be expected to spend on the matter." In another example, to secure payment of current and future legal fees the defendant gave the law firm a note secured by a pledge of essentially all its assets. The court also found that this transfer was not fraudulent.

> Part(b) of Debtor & Creditor Law 272 acknowledges fair consideration from the perspective of a transferee. Qualified providers of legal representation act reasonably when they take steps to assure their own compensation, and for that, they

> appropriately demand a retainer. If not available in cash a retainer
> may take the form of a guarantee or a lien like that which the
> debtor gave . . . lawyers have a right to expect fair compensation.
> For this reason, reasonable retainers are inherently received in
> good faith.

*In re Successor Borrower Servs., LLC*, 489 B.R. 336, 341 (Bankr. W.D.N.Y. 2013).   It bears

noting that in the *Successor Borrower* case, the note was secured by "essentially all of

Successor's assets" (*Id*. at 338) whereas here, the $575,000 is, at most, approximately 5% of the

value of Pursuit's assets, and was granted after not in advance of the provision of services by

MSF pursuant to an advance contractual commitment.

   Given the flexibility surrounding the determination that legal fees are fair

consideration, the allegation that $575,000 did not constitute fair consideration for the complex

and, ultimately successful legal work MSF performed is not plausible.   Plaintiff's mere belief

that the services provided to Pursuit were "obviously" worth far less than $575,000 is

insufficient under the *Twombly/Iqbal* test, particularly in light of the extensive judicially

noticeable record of MSF's extensive and successful services. Because Plaintiff's cannot

plausibly allege that the $575,000 mortgage was not fair consideration Pursuit has not stated

viable claims for a fraudulent conveyance under Sections 273, 273-a, 274 or 275 of the New

York Debtor and Creditor Law.

## C. EVEN IF THE COURT WERE TO FIND AN ISSUE OF FACT REGARDING INSOLVENCY OR FAIR CONSIDERATION, THE CLAIM FOR FRAUDULENT CONVEYANCE SHOULD BE DISMISSED

### 1. Plaintiffs Have Not Alleged The Elements Of A Claim Under Section 273

Section 273 of the New York Debtor and Creditor Law requires the Plaintiff to allege that

the transfer in question was made without fair consideration and by one who is insolvent.  As set

forth in Points 2.A and 2.B above, Plaintiffs have not, and cannot allege either of these elements.

Therefore to the extent the first claim for relief is brought under New York Debtor and Creditor Law § 273, it should be dismissed as a matter of law.

### 2.    Plaintiffs Claim Under Section 273-a Is Not Ripe

New York Debtor and Creditor Law § 273-a only applies "if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." DCL § 273-a. The elements of a claim under New York Debtor and Creditor Law § 273-a are (1) lack of fair consideration for the transfer; (2) where the transferor is a defendant in an action for money damages or a judgment has been docketed against the transferor; and (3) failure to satisfy the judgment. *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 188 (2d Cir. 2006). As set forth above, Plaintiffs have not, and cannot allege the requisite judgment. *See* Koh Aff. Exhibit 11, denying Plaintiffs' motion to the state court for entry of a judgment.  Because "the unsatisfied judgment is a necessary predicate to bringing a DCL § 273-a case," (*Id.* at 189) Plaintiffs cannot bring an action under Section 273-a. *Id.* at 194 (dismissing fraudulent conveyance claim under Section 273-a "as there is no judgment upon which to collect.").

### 3.    Plaintiffs Allegation Of Unreasonably Small Capital Is Insufficient To State A Claim Under Section 274

New York Debtor and Creditor Law § 274 provides

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to claims under Section 274 of the New York Debtor and Creditor Law. *Gindi v. Silvershein*, No. 93 Civ. 8679 (LLS), 1995 WL 347397, at *5 (S.D.N.Y., June 8, 1995) (dismissing fraudulent

conveyance claim not pled with sufficient particularity).   There is no allegation that Pursuit is about to engage in a business or transaction, and certainly not one with the Plaintiffs, let alone an allegation that meets the heightened pleading requirements of 9(b).   The only allegation is paragraph 41 of the Amended Complaint which alleges "[f]ollowing the Meister mortgage, Pursuit possessed unreasonably small capital for its operations and, accordingly, the mortgage was a fraudulent conveyance within the meaning of CPLR [sic] 274." This is merely a recitation of an element of the claim. As such the allegations consist of nothing more than "labels and conclusions" and are not sufficient under the *Iqbal/Twombly*. *See Twombly, supra*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."). *Wilson*, 2015 WL 685194, at *5 (citing *Twombly* at 555 and explaining that a mere "formulaic recitation of the elements of a cause of action will not do."). Nor does this allegation even make sense when the mortgage is for less than 5% of the value of Pursuit's properties. Therefore, the claim for a fraudulent conveyance, to the extent it is brought under Section 274, must be dismissed as a matter of law. Regardless, as stated above, the mortgage was granted for fair consideration; this alone brings the matter outside DCL Section 274.

### 4. Plaintiffs Allegation That Pursuit Knew It Was Likely To Incur Debts Beyond Its Ability To Pay Is Insufficient To State A Claim Under Section 275

New York Debtor and Creditor Law § 275 provides

> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

A claim under this section requires a lack of fair consideration, a lack of ability to pay, and intent. The Court need proceed no further because the mortgage was given for fair consideration.

With regard to intent, the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) applies. *Gindi*, 1995 WL 347397, at *5 (dismissing fraudulent conveyance claim not pled with sufficient particularity). The only allegation on this element is contained in paragraph 42 of the Amended Complaint, which states "[t]he Meister mortgage was made at a time when Pursuit knew it was likely to incur debts beyond its ability to pay them as they matured." As with the claim under section 274, the claim under section 275 is nothing more than an unsubstantiated rote recitation of an element and therefore is insufficient to state a claim as a matter of law. Critically, the Amended Complaint pleads no basis to aver that Pursuit was likely to incur debts beyond its ability to pay them, much less that Pursuit somehow had to have known this.

### 5.   Plaintiffs Allegation Of Actual Intent Is Insufficient To State A Claim Under Section 276

New York Debtor and Creditor Law § 276 provides

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Because of the difficulty in proving actual fraud, for purposes of section 276, Plaintiffs may rely on what has become known as "badges of fraud," "circumstances so commonly associated with fraudulent transfer that their presence gives rise to an inference of fraud." *Ray v. Ray*, 108 A.D.3d 449, 970 N.Y.S.2d 9 (1st Dep't 2013). There are eight "badges of fraud" that are

generally recognized by courts analyzing claims brought under New York Debtor and Creditor Law § 276:

> (1) lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
> (6) the general chronology of the events and transactions under inquiry;
> (7) a questionable transfer not in the usual course of business; and
> (8) the secrecy, haste, or unusualness of the transaction.

However, "[t]he existence of actual intent to defraud is never presumed, and intent to defraud cannot be found based merely on suspicion, conjecture, or doubtful inference." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003) (finding that no reasonable jury could find any badges of fraud). *See also*, *RTN Networks, LLC*, 126 A.D.3d at 478 ("The complaint also fails to plead with particularity defendants' intent to hinder, delay or defraud present or future creditors, as required to properly assert a cause of action for intentional fraudulent conveyance."); *Gindi*, 1995 WL 347397, at *5 (dismissing fraudulent conveyance claim not pled with sufficient particularity).

Plaintiffs only attempt to allege one of the eight "badges of fraud" – haste and secrecy. Am. Compl. ¶ 43. Although the buzz words "haste and secrecy" are used in the Amended Complaint, the actions therein described are neither.

> 28. During the entire process of cancelling the notice of pendency, Pursuit, Sanford and Meister, Seelig & Fein acted with secrecy and haste. First, the motion to cancel the notice of pendency was filed by an order to show cause. Under the schedule imposed by Judge

Tingling, the order to show cause did not have to be served until November 26, 2014 and responses were due on December 1, 2014, the day immediately following the Thanksgiving Holiday. Contrary to the rules regarding expedited relief, Pursuit did not contact the Knopf's attorneys to ascertain whether this schedule was agreeable to them, and did not notify the Knopfs' attorneys of the appearance before Justice Tingling at which the briefing schedule was set. After obtaining the order to show cause, Pursuit did not serve the order to show cause until after the close of business on November 26 which meant that the Knopfs' counsel could not obtain a full set of the papers supporting the motion until after the Thanksgiving weekend -- *i.e.*, December 1 – the same day the Knopfs' opposition was due.

29. Fortuitously for Pursuit and Meister Seelig & Fein, Justice Tingling's December 23, 2014 order cancelling the notice of pendency was filed in the County Clerk's office the very next day, December 24, 2014. On December 31, 2014, the clerk apparently cancelled the notices of pendency, at Meister Seelig's request.

30. Thereafter, on January 6, 2015, before the Knopfs could obtain a stay in the Appellate Division against any further encumbrance of the properties, Pursuit granted Meister Seelig & Fein the $575,000 mortgage.

Am. Compl. ¶¶28-30. Rather than showing "haste and secrecy", these allegations describe a law firm representing its client and ensuring payment for its services. Indeed the mortgage was promptly recorded in the public real estate records, and thus hardly a secret.

In making the allegation that they were not given proper notice of the Order to Show Cause Plaintiffs fail to cite to the alleged requirement for advance notice for the simple reason that there is no such requirement. Moreover, as Plaintiffs concede, the Judge signed the Order to Show to Cause and in doing so was free to change the dates as he wished. More important, there is no connection whatsoever to a litigant choosing to move in an expedited manner, and a transfer made many weeks later. The transfer (*i.e.*, mortgage) was not made until the court had

ruled that the notices of pendency were not proper, and the notice of pendency had been cancelled by the clerk.  Moreover, and the mortgage was duly recorded – the exact opposite of secrecy.  Allegations such as these which are mere speculation and conjecture do not meet the *Iqubal/Twombly* standard, let alone the heightened pleading requirement of Rule 9(b) and therefore the claim for a fraudulent conveyance, to the extent it is brought under Section 276, must be dismissed as a matter of law.  *See Ray*, 108 A.D.3d 452 (upholding dismissal of fraudulent conveyance claim which sought constructive trust on mortgage proceeds, including those used to pay defendant's attorneys, where plaintiff claimed "haste and secrecy", holding that "payment of legal fees . . . does not demonstrate circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent, regardless of whether the payment was for services already rendered or to be rendered in that ongoing action.").

## CONCLUSION

Plaintiffs have not, and cannot, properly allege that Pursuit is insolvent.  Nor have they, or can they, properly allege a lack of fair consideration for the mortgage at issue.  Nor have they, or can they, property allege intent or the existance of a judgement against Pursuit.  For all of these reasons, as set forth in detail herein, the claim for relief as against MSF should be dismissed.

Dated: November 20, 2015

Stephan B. Meister, Esq.
Howard S. Koh, Esq.
Randi Lane Maidman, Esq.
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
sbm@msf-law.com

*Attorneys for Defendant Meister Seelig &
Fein LLP*