UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NORMA KNOPF and MICHAEL KNOPF,

Plaintiffs,

Case No.15 Civ. 05090(DLC)

-against-

MEISTER SEELIG & FEIN, LLP and PURSUIT HOLDINGS, LLC,

Defendants.
------------------------------------------------------------------X

**DEFENDANT MEISTER SEELIG & FEIN LLP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS**

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500
*Attorneys for Defendant*
*Meister Seelig & Fein LLP*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...........................................................................................................1

I. THE MORTGAGE FROM PURSUIT TO MSF WAS NOT A FRAUDULENT CONVEYANCE BECAUSE PURSUIT IS NOT INSOLVENT ................................1

II. THE MORTGAGE FROM PURSUIT TO MSF WAS NOT A FRAUDULENT CONVEYANCE BECAUSE IT WAS GIVEN FOR FAIR CONSIDERATION ........4

III. EVEN IF THE COURT WERE TO FIND AN ISSUE OF FACT REGARDING INSOLVENCY OR FAIR CONSIDERATION, THE CLAIM FOR FRAUDULENT CONVEYANCE SHOULD BE DISMISSED...........................................................7

A. Plaintiffs Claim Under Section 273-a Is Not Ripe........................................7

B. Plaintiffs Allegation Of Unreasonably Small Capital Is Insufficient To State A Claim Under Section 274 ............................................................7

C. Plaintiffs Allegation That Pursuit Knew It Was Likely To Incur Debts Beyond Its Ability To Pay Is Insufficient To State A Claim Under Section 275.........................................................................................8

D. Plaintiffs Allegation Of Actual Intent Is Insufficient To State A Claim Under Section 276.......................................................................9

CONCLUSION.........................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Chen v. New Trend Apparel, Inc.*,
8 F. Supp. 3d 406 (S.D.N.Y. 2014) .......... 3

*Gala Enters., Inc. v. Hewlett Packard Co.*,
989 F. Supp. 525 (1998) .......... 5

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (1995).......... 4

*In re Adelphia Recovery Trust*,
634 F.3d 678 (2011).......... 3

*In re Successor Borrower Servs., LLC*,
489 B.R. 336, 341 (Bankr. W.D.N.Y. 2013) .......... 4

*In re Rego Crescent Corp.*,
23 B.R. 958 (E.D.N.Y. 1982) .......... 4

*In re Trinsum Grp., Inc.*,
460 B.R. 379 (S.D.N.Y. 2011).......... 2

*Lippe v. Bairnco Corp.*,
249 F. Supp. 2d 357 (S.D.N.Y. 2003).......... 3

*McCarty v. Nostrand Lumber Co.*,
232 A.D. 63, 248 N.Y.S. 606 (2d Dep't 1931) .......... 3

*Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*,
621 F. Supp. 198, 220 (S.D.N.Y. 1985).......... 3

*RTN Networks, LLC v. Telco Grp., Inc.*,
126 A.D.3d 477, 5 N.Y.S.3d 80 (1st Dep't 2015) .......... 4

*Wilson v. Wilder Balter Partners, Inc.*,
No. 13-CV-2595 KMK, 2015 WL 685194 (S.D.N.Y. Feb. 17, 2015) .......... 5

**Statutes**

N.Y. Debt. & Cred. Law § 271 (McKinney) .......... 3

N.Y. Debt. & Cred. Law § 273-275 (McKinney).......... 2

N.Y. Debt. & Cred. Law § 274 (McKinney) .......... 4, 6, 7, 8

N.Y. Debt. & Cred. Law § 275 (McKinney) ........................................................................ 4, 6, 8

N.Y. Debt. & Cred. Law § 276 (McKinney) ........................................................................ 9

Defendant Meister Seelig & Fein LLP ("MSF") respectfully submits this reply memorandum of law in further support of its motion, pursuant to Federal Rules of Civil Procedure 12(c), seeking dismissal of the first claim of relief, for fraudulent conveyance in violation of Article 10 of the New York Debtor and Creditor Law, and, as this is the only claim against MSF, seeking dismissal of the entire action against MSF, and such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

In opposition to MSF's motion to dismiss, Plaintiffs contend that they have plausibly alleged that MSF is the recipient of a fraudulent conveyance, because it took a mortgage lien to secure payment for its legal work. Plaintiff's contentions are not plausible. The admissions of Plaintiffs' counsel that the properties owned by Pursuit have "doubled" in value since the time they were purchased by Pursuit bind them. Those admissions demonstrate that Pursuit[1] was not insolvent at the time it gave MSF the mortgage. As insolvency at the time of conveyance is an essential element of a fraudulent conveyance claim, plaintiffs' allegations fail. Additionally, the mortgage Pursuit gave to MSF was fair consideration for MSF's work. For this independent reason, Plaintiffs' claims against MSF should be dismissed.

## ARGUMENT

### I. THE MORTGAGE FROM PURSUIT TO MSF WAS NOT A FRAUDULENT CONVEYANCE BECAUSE PURSUIT IS NOT INSOLVENT

In the Amended Complaint, Plaintiffs fail to allege the value of Pursuit's assets. Because of this failure, Plaintiffs have not alleged, and cannot allege, that the present fair market value of Pursuit's assets is less than its debts, as is required by the statute. For this reason alone,

[1] All terms not otherwise defined herein shall have the same meaning ascribed to them in the MSF's moving papers.

under the *Iqbal* and *Twombly* standard, which requires some specific factual basis for a required element, rather than a rote recitation of the elements, MSF's motion to dismiss should be granted. *See In re Trinsum Grp., Inc.*, 460 B.R. 379 (S.D.N.Y. 2011) (dismissing claims on a motion to dismiss under New York Debtor & Creditor Law §§ 273-275 where the allegations in the amended complaint were insufficient to show insolvency).

Plaintiffs attempt to remedy this failure by citing to a report by Douglas Elliman, Decade Survey of Townhouse Sales 2005-2014 (the "Elliman Survey"). In so doing, Plaintiffs are attempting to introduce an expert opinion to try to persuade the Court that Pursuit, the owner of two largely unencumbered[2] and very valuable pieces of Manhattan real estate, is insolvent. This is improper for several reasons, the first of which is that Mr. Berry, Plaintiffs' counsel, is not an expert on the New York Real Estate market. Given this fact, the Court ought not to consider either the Elliman Report or Mr. Berry's contorted analysis that, according to him, demonstrates Pursuit's insolvency.

In stark contrast, Mr. Berry has previously admitted that Pursuit's properties have "doubled" in value since they were purchased by Pursuit. Koh Decl. at Exhibit 14. This admission should be binding on plaintiffs as an admission against interest. As discussed in MSF's moving papers, this admission demonstrates that Pursuit was solvent when it executed the mortgage and executing the mortgage did not render Pursuit insolvent.

Moreover, Plaintiffs are judicially estopped now from contending that Pursuit is insolvent. They previously alleged that the value of these properties was high when they were before the Appellate Division, First Department in order to obtain a stay of the *lis pendens*

[2] There is no dispute that each property is worth several million dollars and the only recorded liens on the properties are tax liens in the amount of $265,000, a lien for unpaid common charges in the amount of $288.132 and two mortgages in the amounts of $100,000 and $575,000.

cancellation. They were successful in achieving that result. Having made an allegation of solvency and having received a favorable judicial result in reliance thereon, Plaintiffs are now estopped from contenting Pursuit is insolvent. *In re Adelphia Recovery Trus*t, 634 F.3d 678, 696-697 (2011).

New York Debtor Creditor Law § 271 defines insolvency as arising "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." "Cash flow is not a factor, and an 'inability to pay current obligations as they mature does not show insolvency.'" *Morgan Guar. Trust Co. v. Hellenic Lines Ltd*., 621 F. Supp. 198, 220 (S.D.N.Y. 1985) (refusing to set aside mortgages under New York Debtor and Creditor Law); *Chen v. New Trend Apparel, Inc*., 8 F. Supp. 3d 406, 445 (S.D.N.Y. 2014) ("The DCL's measure of insolvency focuses on companies in serious overall financial trouble, as opposed to companies experiencing a temporary lack of liquidity."); *McCarty v. Nostrand Lumber Co*., 232 A.D. 63, 65, 248 N.Y.S. 606 (2d Dep't 1931) ("Inability to pay current obligations as they mature does not establish insolvency.").

Incredibly, Plaintiffs' claim this law is "beside the point." Opposition Memorandum of Law at page 9. This is, of course, nonsense. Insolvency is a prerequiste to a fraudulent conveyance claim. *Lippe v. Bairnco Corp*., 249 F. Supp. 2d 357, 376 (S.D.N.Y. 2003). While it is true that Pursuit has not paid certain tax liens, common chargers and legal fees, there is no credible allegation that the lack of payment is due to insolvency; rather it is due solely to the liquidity problem caused by the improper notices of pendency placed on its assets by Plaintiffs which have prevented Pursuit from liquidating its assets and thereby raising sufficient cash to pay its obligations. Said differently, if Plaintiffs had not prevented Pursuit from selling its real

property, Pursuit would have had enough cash to pay MSF and MSF would not have needed to secure payment for its legal work with the mortgage. Plaintiffs should not now benefit from their own bad faith filing of a *lis pendens*.

Mr. Berry's contorted computations of insolvency are also flawed because a full ninety percent (90%) of the computed liabilities are the amount which the Plaintiffs claim is owed to them in the State Court action. But this is improper as the lower court has already ruled that they have not shown entitlement to the money they claim they are owed. *See* Koh Decl. Exhibit 11.

In sum, Plaintiffs' allegation of Pursuit's insolvency simply is not plausible. As such, they fall far below the standard required by *Iqbal* and *Twombly* and, therefore, to the extent the claim for fraudulent conveyance is brought under Sections 273, 274 or 275 of the New York Debtor and Creditor Law, this claim should be dismissed as a matter of law.

## II. THE MORTGAGE FROM PURSUIT TO MSF WAS NOT A FRAUDULENT CONVEYANCE BECAUSE IT WAS GIVEN FOR FAIR CONSIDERATION

In addition to the requirement that the Plaintiff adequately allege insolvency, New York's Debtor Creditor Law sections 273, 273-a, 274 and 275 all required a plaintiff to also allege the consideration given to the transferee was not fair. See, generally, *In re Rego Crescent Corp*., 23 B.R. 958, 967 (E.D.N.Y. 1982). When alleging that the consideration was not fair, "Plaintiff's 'mere belief' that [defendant] transferred its assets without fair consideration is insufficient." *RTN Networks, LLC v. Telco Grp., Inc*., 126 A.D.3d 477, 5 N.Y.S.3d 80 (1st Dep't 2015). Unfounded speculation, however, is all that Plaintiffs offer, both in the Amended Complaint and in their opposition papers. This is not enough to survive a motion to dismiss in the post *Twombly Iqbal* universe.

The purported fraudulent transfer here was made to secure the payment of previously incurred legal fees and fees for specifically enumerated future legal work. Courts regularly have

found transfers to secure estimations of legal fees, such as the one made here, to be valid and not fraudulent conveyances. See *In re Successor Borrower Servs., LLC*, 489 B.R. 336, 341 (Bankr. W.D.N.Y. 2013). (defendant's note secured by a pledge of essentially all its assets to secure payment of current and future legal fees found not to be a fraudulent conveyance); *Gala Enters., Inc. v. Hewlett Packard Co.*, 989 F. Supp. 525, 529 (1998) (transfer of $500,000 to a law firm as a flat fee at the outset of representation on a criminal matter was not a fraudulent conveyance "given the amount of time that the Firm reasonably could be expected to spend on the matter.").

Plaintiffs allege a lack of fair consideration solely based on their unfounded speculation that the services provided by MSF to Pursuit were limited and "obviously far less than $575,000" (Am. Compl. ¶ 27). Plaintiffs' attempt to bolster their meager allegations by repeating them over and over again in several pages. But making the same unsupported claim statement over and over again does not make it true. Indeed, as the Second Circuit explained in *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (1995), a case upon which Plaintiffs purport to rely heavily, "individual defendants may choose to pay as much to their attorneys for their defense as they consider worthwhile, as long as the payments fall within a fair range of reasonable compensation." Plaintiffs offer nothing that demonstrates MSF's invoices do not "fall within a fair range of reasonable compensation."

In any event, MSF's services were substantial and successful, as set forth in detail in MSF's Moving Memorandum of Law at pages 3-4.

Plaintiffs also falsely state that MSF has "refused" to produce its time records for the work it performed for Pursuit. MSF has not refused to do so and, in fact, if the Court wishes to review the time records – which would show that MSF actually incurred *more* than $575,000 in

time and expenses in its representation of Pursuit – MSF has no objection to providing them to the Court for review.[3]

Plaintiffs also allege that there was no "advance in the form of a contract to perform fixed and definite agreed-upon legal services for a specific duration of time."  Am. Compl. ¶ 36.  In fact, *there was such a contract*.  Koh Aff. Exhibit 13.  Faced with this irrefutable fact, Plaintiffs take the untenable position that a retainer which sets forth in specific detail the particular tasks the law firm will perform (rather than the usual general language that the firm will represent the client in the referenced action and perform such other legal work as the client may request) is somehow too "speculative" to be considered "fixed and definite agree-upon legal services."  Plaintiffs' characterization of the retainer agreement here as "speculative" is implausible.  A review of the retainer agreement makes clear it is for specific and fixed future services.[4]

Because Plaintiff's cannot plausibly allege that the $575,000 mortgage was not fair consideration Pursuit has not stated viable claims for a fraudulent conveyance under Sections 273, 273-a, 274 or 275 of the New York Debtor and Creditor Law.

---

[3] In fact, the only reasons MSF has not submitted its time statements to this Court simultaneously with this Reply Memorandum of Law is that they contained information which is privileged and confidential (although that issue could be addressed with an appropriate order).

[4] Plaintiffs also quote a portion of an off the cuff statement made by Mr. Sanford at an oral argument in the State Court action concerning an alleged waiver of a $150,000 fee for appellate work related to an alleged agreement to waive a malpractice claim.  While Mr. Sanford said this, it is categorically untrue.  Instead what happened was this.  Mr. Sanford demanded a personal loan be made by MSF to him to pay certain expenses, failing he which he threatened to sue MSF – not for malpractice – but for failing to pay disbursements (though the retainer agreement nowhere required MSF to disburse costs.  The "waiver" in question strictly related to that threatened claim and had nothing whatever to do with any supposed malpractice.  In any event, Plaintiffs then posit that the $150,000 fee was omitted from the amended retainer agreement because of this claimed "waiver."  Again, this is not true.  It was omitted because the decision from the appellate court was only partially in Defendants favor.  Although none of this is germane to the issue currently before this Court, because the implication \ impugns the reputation of MSF, MSF feels compelled to respond and set the record straight.

## III. EVEN IF THE COURT WERE TO FIND AN ISSUE OF FACT REGARDING INSOLVENCY OR FAIR CONSIDERATION, THE CLAIM FOR FRAUDULENT CONVEYANCE SHOULD STILL BE DISMISSED

### A. Plaintiffs Claim Under Section 273-a Is Not Ripe

Plaintiffs have admitted that this claim is not ripe and have consented to its withdrawal. *See* Opposition Memorandum of Law at page 24.

### B. Plaintiffs Allegation Of Unreasonably Small Capital Is Insufficient To State A Claim Under Section 274

Plaintiffs, in opposing the portion of MSF's motion to dismiss regarding the unreasonably small capital element of New York Debtor and Creditor Law §274, state only that "proof of insolvency establishes *a fortiorari* that Pursuit was left with unreasonably small capital." Opposition Memorandum of Law at page 9. For all of the reasons set forth in Point I, supra, as well as in Point II.A of MSF's Moving Brief, Pursuit is not insolvent, and was not insolvent on January 6, 2015 when the mortgage was given to secure past legal fees and specifically delineated future legal fees.

Furthermore, in their opposition papers Plaintiffs completely ignore the fact a required element of New York Debtor and Creditor Law §274 is that the conveyance is made by a person who "is engaged or is about to engage in a business or transaction." There is no allegation that Pursuit is about to engage in a business or transaction. The only allegation regarding New York Debtor and Creditor Law §274 is contained in paragraph 41 of the Amended Complaint, which alleges "[f]ollowing the Meister mortgage, Pursuit possessed unreasonably small capital for its operations and, accordingly, the mortgage was a fraudulent conveyance within the meaning of CPLR [sic] 274." This is mere recitation by rote of an element of the claim. As such the allegations consist of nothing more than "labels and conclusions" and are not sufficient under the *Iqbal/Twombly*. *See Twombly, supra,* at 555 ("a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions."). *Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595 KMK, 2015 WL 685194, at *5 (S.D.N.Y. Feb. 17, 2015) (citing *Twombly* at 555 (2007) and explaining that a mere "formulaic recitation of the elements of a cause of action will not do.").

### C. Plaintiffs Allegation That Pursuit Knew It Was Likely To Incur Debts Beyond Its Ability To Pay Is Insufficient To State A Claim Under Section 275

In their opposition papers, Plaintiffs take the same position with regard to New York Debtor and Creditor Law §275 as they do with regard to §274, *to wit*, that all they have to do to allege that Pursuit knew it was likely to incur debts beyond its ability to pay is to show insolvency. *See* Opposition Memorandum of Law at Point II. As set forth previously, for all of the reasons set forth in Point I, supra, as well as in Point II.A of MSF's Moving Brief, Pursuit is not insolvent, and was not insolvent on January 6, 2015 when the mortgage was given to secure past legal fees and specifically delineated future legal fees.

Moreover, Plaintiffs have completely ignored the required element of intent. The only allegation on this element is contained in paragraph 42 of the Amended Complaint, which states "[t]he Meister mortgage was made at a time when Pursuit knew it was likely to incur debts beyond its ability to pay them as they matured." As with the claim under section 274, the claim under section 275 is nothing more than an unsubstantiated rote recitation of an element and therefore is insufficient to state a claim as a matter of law. Critically, the Amended Complaint pleads no specific factual basis to aver that Pursuit was likely to incur debts beyond its ability to pay them, much less that Pursuit somehow had to have known this.

**D. Plaintiffs Allegation Of Actual Intent Is Insufficient To State A Claim Under Section 276**

The parties are in agreement that a claim under New York Debtor and Creditor Law §276 is required to be pled with particularity pursuant to Rule 9(b) and that the required allegation of intent can be shown through allegations of "badges of fraud." Plaintiffs, however, are utterly confused about which conveyance they must show occurred under circumstances which exhibit these badges of fraud, because their argument focuses on alleged badges of fraud associated with transactions which occurred in 2006, rather than the 2015 conveyance to MSF. The only other argument made by Plaintiffs on this point concern inadmissible settlement discussions and thus should be disregarded. Federal Rules of Evidence 408.

**CONCLUSION**

Plaintiffs have not, and cannot, properly allege that Pursuit is insolvent. Nor have they, or can they, properly allege a lack of fair consideration for the mortgage at issue. Accordingly, Plaintiffs have not made plausible allegations that MSF is the receipient of a fraudulent conveyance. For these reasons, and those set forthin MSF's moving papers, the Court should dismiss Plaintiffs' Complaint against MSF.

Dated: January 7, 2015

/s/ Stephen B. Meister_____________
Stephen B. Meister, Esq.
Howard S. Koh, Esq.
Randi Lane Maidman, Esq.
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
sbm@msf-law.com

*Attorneys for Defendant Meister Seelig & Fein LLP*