UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
NORMA KNOPF and MICHAEL KNOPF,          :
                                        :        15cv5090(DLC)
                  Plaintiffs,           :
                                        :     OPINION AND ORDER
        -v-                             :
                                        :
MEISTER, SEELIG & FEIN, LLP and         :
PURSUIT HOLDINGS, LLC.,                  :
                                        :
                  Defendants.           :
                                        :
                                        :
------------------------------------ X

APPEARANCES:

For the plaintiffs:
Eric W. Berry
Eric W. Berry, PC
5 Columbus Circle, 8th Floor
New York, NY 10019

For the defendant Pursuit Holdings, LLC:
Nathaniel H. Akerman
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019

For the defendant Meister, Seelig & Fein, LLP:
Stephen B. Meister
Randi Lane Maidman
Howard S. Koh
Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, NY 10017

DENISE COTE, District Judge:

    This diversity action arises from a contract dispute

between South Carolina residents Michael Knopf and Norma Knopf

(collectively, "the Knopfs"), on the one hand, and Pursuit

Holdings, LLC[1] ("Pursuit"), on the other.  The contract dispute
is currently being litigated in the New York Supreme Court, New
York County (the "State Court Action").  The Knopfs filed the
instant action alleging a January 2015 fraudulent conveyance
between Pursuit and its attorneys at Meister, Seelig & Fein, LLP
("MSF"), and seeking a permanent injunction enjoining transfer
of Pursuit's property.  Currently before the Court are MSF's
motion to dismiss the fraudulent conveyance claims, Pursuit's
motion to dismiss the claim for a permanent injunction, and
Pursuit's request for attorney's fees.  For the reasons that
follow, the motions are granted in part.  The claim for actual
fraudulent conveyance is dismissed.  The claims for constructive
fraudulent conveyance may proceed.

## Background

The following facts are taken from the amended complaint
and documents integral to the plaintiffs' claims.  In the late
1990's, the Knopfs befriended Michael Sanford ("Sanford"), the
owner of Pursuit.  The Knopfs invested approximately $11.6
million in Sanford's hedge fund, Ulysses Opportunity Fund, L.P.,
later known as Sanford Partners, L.P.

Out of these funds, the Knopfs extended two loans to

---

[1] Pursuit's sole member is Michael Sanford, a resident of New
York.

2

Pursuit, the first for $1,690,860 to finance the purchase of a residence located at 44 East 67th Street, Unit PHC ("PHC"), and the second for $3,250,000 to finance the purchase of three condominium units located at 10 Bedford Street (the "Townhouse," collectively with PHC, the "Properties"). Both loan agreements included a provision in which Sanford, on behalf of Pursuit, agreed not to sell, mortgage, hypothecate, or otherwise encumber the acquired real estate.

Pursuit failed to repay any portion of the two loans to the Knopfs. The Knopfs subsequently commenced the State Court Action against Sanford and Pursuit, among others. In the State Court Action, the Knopfs alleged that Sanford and Pursuit had breached the loan agreement with the Knopfs by failing to grant them a mortgage on the Properties, and sought money damages as well as imposition of a constructive trust on the real estate.

In connection with their claims in the State Court Action, the Knopfs filed notices of pendency against the Properties on September 18, 2009 (the "Initial Notices"). Justice Milton Tingling refused to extend the Initial Notices, but the Appellate Division, First Department, extended them on an interim basis on September 12, 2012. The Appellate Division on October 15, 2013, extended the Initial Notices for a period of three years, to end on September 17, 2015. Knopf v. Sanford,

972 N.Y.S.2d 893, 894 (1st Dep't 2013).

Pursuit retained MSF to represent it in defending against the Knopfs' suit.  The engagement letter between Pursuit and MSF, dated July 29, 2014, indicated that MSF would represent Pursuit with respect to (1) moving to cancel the notice of pendency on PHC, (2) moving for partial summary judgment solely as to the portion of the Knopfs' constructive trust claim relating to PHC, and (3) prosecuting a claim on behalf of Pursuit to recover damages/expenses incurred due to the notice of pendency filed by the Knopfs against PHC and seeking sanctions.  MSF would also represent Pursuit or all defendants in any appeals taken concerning these three matters or any motion to stay any order canceling the notices of pendency.  MSF also agreed to represent the defendants in defending an appeal of Justice Tingling's order denying summary judgment to the Knopfs.  On November 26, 2014, Pursuit, represented by MSF, moved to cancel the notices of pendency.

In a decision dated December 11, 2014, the Appellate Division granted summary judgment in favor of the Knopfs on their breach of contract claims.  Knopf v. Sanford, 1 N.Y.S.3d 18 (1st Dep't 2014).  The Appellate Division also held that the Knopfs had failed to establish their entitlement to summary judgment on their constructive trust claim because they had not

made an evidentiary showing that money damages would be inadequate.  Id.  Despite the grant of summary judgment on their contract claim, the Knopfs have not obtained a final judgment in the State Court Action.

On December 11, 2014, Pursuit and Sanford sent a letter to Justice Tingling again requesting that the notices of pendency be cancelled on the basis that Sanford was "indigent."  Justice Tingling cancelled the notices on December 23, 2014.

On January 21, 2015, Pursuit recorded a mortgage on PHC, dated January 6, 2015, in favor of MSF for $575,999.  The purpose of the mortgage was to secure payment for past and prospective legal representation by MSF for Pursuit.  On February 17, 2015, the Appellate Division issued an order staying the cancellation of the notices of pendency and enjoining Pursuit and Sanford from attempting to cancel or remove the notices of pendency.  On July 2, 2015, the Appellate Division affirmed Justice Tingling's order cancelling the notices of pendency.

On July 1, 2015, the Knopfs filed the instant diversity action against Pursuit and MSF, seeking to set aside the mortgage to MSF as a fraudulent conveyance.  Specifically, the complaint alleges that the $575,000 mortgage granted to MSF was made for less than fair consideration and constituted a

5

constructive fraudulent conveyance under §§ 273, 274, and 275 of the New York Debtor Creditor Law ("DCL").[2]  Alternatively, the complaint alleges that the mortgage was made with actual intent to defraud the Knopfs and was therefore an actual fraudulent conveyance under § 276 of the DCL.  Plaintiffs also seek a permanent injunction, pursuant to § 279(a) of the DCL, enjoining Pursuit from transferring or further encumbering the Properties. The Knopfs filed an amended complaint on August 24, and the defendants filed their answer in September of 2015.

In connection with this action, the Knopfs also filed new notices of pendency on both PHC and the Townhouse (the "Second Notices").  Following a conference with the Court on October 9, defendants moved on October 13 to cancel the Second Notices.  In a Memorandum Opinion dated October 16, the Court cancelled both notices of pendency.  With respect to the Townhouse, the notice of pendency was improper because the complaint alleges a fraudulent mortgage on PHC only, and thus did not "affect the title to, or the possession, use or enjoyment of" the Townhouse, as required by CPLR § 6501.  With respect to PHC, the notice of

---

[2] The complaint cites to the New York Civil Practice Law and Rules ("CPLR") instead of the New York Debtor and Creditor Law. Because the parties' other submissions unambiguously refer to the Debtor and Creditor Law, these claims will be construed accordingly.

pendency was filed in bad faith because the fraudulent
conveyance claim was made against MSF, not Pursuit, and there
was no suggestion that MSF would be unable to pay any judgment
entered against it.  Furthermore, the filing of the Second
Notices was an attempt by plaintiffs to, in effect, reverse the
state court's decision to cancel the Initial Notices, and to
obtain the equivalent of an attachment on the Properties pending
judgment, an improper use of lis pendens.

On November 19, the Knopfs filed a separate suit against
Pursuit in the New York Supreme Court, New York County.  In that
suit, the Knopfs alleged that (1) Pursuit had failed to pay
certain New York City property taxes on the Townhouse, (2) New
York City assigned its tax claims against Pursuit to a trust
called NYCTL 2011-A Trust ("NYCTL"), (3) NYCTL initiated three
foreclosure actions against the Townhouse and obtained tax liens
on the property, (4) the Knopfs, in order to protect their
property interest in the Townhouse, paid the outstanding tax
liability and satisfied the liens, and (5) the Knopfs became
subrogees of NYCTL's claims against Pursuit.  The Knopfs
requested the imposition of equitable liens on the Townhouse
equal to amounts the Knopfs paid to satisfy NYCTL's liens.  They
also requested that the Townhouse be sold at auction to satisfy
their liens.  On January 11, Pursuit removed the case to federal

court and this Court accepted the case as a related matter to the pending case.  On January 28, 2016, the case was remanded to state court for lack of subject matter jurisdiction because Pursuit could not remove the action as an in-state defendant. See 28 U.S.C. § 1441(b)(2).

On November 20, 2015, MSF and Pursuit filed motions to dismiss the instant complaint pursuant to Rule 12(c), Fed. R. Civ. P.  The motions were fully submitted on January 7.

## Discussion

The standard for deciding a motion to dismiss under Rule 12(c) is identical to that brought under Rule 12(b)(6).  Bank of New York v. First Millennium, Inc., 607 F.3d 905 (2d Cir. 2010). When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  In deciding a motion to dismiss, the court considers "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference."  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).  The court also considers "documents upon which the complaint relies and which are integral to the complaint."  Subaru Distributors Corp. v. Subaru

of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).

## I.    Constructive Fraudulent Conveyance

> Under the DCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and (inter alia) if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005). Plaintiffs have pleaded claims under all three of the constructive fraudulent conveyance provisions.

9

## A.  Fair Consideration

As defined by the DCL, fair consideration is given for property or an obligation:

> (a)  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

> (b)  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. D.C.L. § 272.  For a conveyance to have been made for fair consideration "(1) the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.'"  <u>Sharp</u>, 403 F.3d at 53 (citation omitted).  "[W]hat constitutes fair consideration under section 272 must be determined upon the facts and circumstances of each particular case."  <u>United States v. McCombs</u>, 30 F.3d 310, 326 (2d Cir. 1994) (citation omitted). When a conveyance is made in consideration of future services, those services must be "fixed and definite" to constitute fair consideration.  <u>HBE Leasing Corp. v. Frank</u>, 61 F.3d 1054, 1061 (2d Cir. 1995).

The parties do not dispute that Pursuit granted a mortgage to MSF in the amount of roughly $575,000.  According to the complaint, the value of the legal services provided by MSF to Pursuit in consideration of the mortgage was far less than $575,000.

The Knopfs have adequately pleaded lack of fair consideration.  First, the Knopfs have alleged facts suggesting that the total value of the legal representation provided by MSF was less than the $575,000 given by Pursuit in the form of a mortgage.  Second, the Knopfs have alleged that to the extent the mortgage was an advance payment for future legal work, such future work was too indefinite to constitute fair consideration. Third, the Knopfs have alleged the absence of good faith because they contend that (1) the mortgage value was inflated in order to deprive the Knopfs of their interest in the Properties, (2) MSF artificially inflated its legal bills in bad faith, and (3) Pursuit improperly paid MSF for legal work for other parties. Because fair equivalent value and good faith are both fact-specific inquiries, McCombs, 30 F.3d at 326, the value of the legal services performed by MSF and the good faith, or lack thereof, of Pursuit cannot be determined in deciding this motion

11

to dismiss.[3]

**B. Insolvency (DCL § 273)**

As defined by the DCL, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  N.Y. Debt. & Cred. Law § 271.  Solvency under the DCL is determined by comparing the assets of the transferor to its existing debts and probable future liability, but it does not require that a debtor have sufficient cash flow or liquid assets to pay all its liabilities.

In their amended complaint, as well as in the opposition brief, the Knopfs adequately allege that Pursuit was insolvent at the time it granted the mortgage to MSF.[4]  They allege that Pursuit's assets are roughly $8.36 million, while its liabilities are roughly $8.64 million.  The Knopfs assert that

---

[3] This conclusion is not altered by the plaintiffs' consent to the Court's consideration of the fee schedule contained in the engagement letter between Pursuit and MSF.  Even were the Court to consider the fee schedule, it could not determine, in deciding this motion to dismiss, whether those fees represent fair equivalent value for the work actually performed by MSF.

[4] Because some of the facts on which the plaintiffs rely to support their more general allegations in the amended complaint have been recited by the plaintiffs in their memorandum in opposition to this motion, the plaintiffs will be given an opportunity to file a second amended complaint.

Pursuit owes them approximately $7.85 million pursuant to the two real estate loans, and has other debts of roughly $792,000.

The Knopfs allege that Pursuit's only assets are the Properties, and provide a basis for estimating the value of the Properties at roughly $8.36 million.  The Knopfs allege that PHC is worth $2.929 million because that is the amount for which Pursuit agreed to sell PHC to an individual named Michael Phillips.

The Knopfs allege that the Townhouse is worth $5,427,500. They arrive at that number by starting with the price Pursuit paid for the Townhouse, $3.25 million, and relying on a report by Douglas Elliman titled <u>Decade Survey of Townhouse Sales 2005 – 2014</u> (the "Elliman Report"), which allegedly shows that townhouse prices in Lower Manhattan[5] rose by 78.8 percent between January 1, 2005 and December 31, 2014.  The Knopfs contend that because the period between Pursuit's purchase of the Townhouse and the granting of the mortgage to MSF covers 103 of the 120 months analyzed in the Elliman Report, it is reasonable to estimate that the Townhouse appreciated in value by 67.6

---

[5] The Elliman Survey defines the "downtown" area as being bounded by West 34th Street and East 42nd to the north, Battery Park to the south, the Hudson River to the west, and the East River to the east.

percent.  While the Knopfs have made selective use of the
Elliman Report,[6] it does provides a plausible basis for their
estimate of the value of the Townhouse.  Accordingly, the
plaintiffs have plausibly alleged the value of Pursuit's assets
to be approximately $8.36 million.  Because they have plausibly
alleged that Pursuit's assets are roughly $8.36 million and its
liabilities are roughly $8.64 million, the Knopfs have
adequately pleaded Pursuit's insolvency for purposes of Rule
12(b), and this claim may proceed.

### C. Unreasonably Small Capital (DCL § 274)

A conveyance made without fair consideration is
constructively fraudulent "when the person making it is engaged
or is about to engage in a business or transaction for which the
property remaining in his hands after the conveyance is an
unreasonably small capital."  N.Y. Debt. & Cred. Law § 274.  The
amended complaint alleges that "[f]ollowing the Meister
mortgage, Pursuit possessed unreasonably small capital for its
Operations."  As discussed in connection with insolvency, the
Knopfs have plausibly alleged that Pursuit's liabilities
exceeded its assets at the time it granted the mortgage to, and
entered into the engagement letter with, MSF.  The Knopfs have

---

[6] If the Knopfs had used average instead of median prices, the
valuation of the Townhouse would have been greater.

also alleged that Pursuit was delinquent in paying property taxes on the Properties.  The allegations are sufficient to plead that Pursuit was left with "unreasonably small capital" when it granted the mortgage to MSF.  Accordingly, this claim may proceed.

### D. Intent to Incur Debts Beyond Ability to Pay (DCL § 275)

A conveyance made without fair consideration is constructively fraudulent "when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature."  N.Y. Debt. & Cred. Law § 275.  This claim is adequately pleaded because the Knopfs have alleged that Pursuit's liabilities exceed its assets and thus it is plausible that Pursuit intended to incur debts beyond its ability to pay when it granted to mortgage to MSF.  Accordingly, this claim may proceed.

### II.  Actual Fraudulent Conveyance

A conveyance is an actual fraudulent conveyance if made "with actual intent . . . to hinder, delay, or defraud either present or future creditors."  N.Y. Debt. & Cred. Law § 276.  "Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given."  In re Sharp, 403 F.3d at 56 (citation omitted).

15

Because a claim under § 276 sounds in fraud, it must satisfy the heightened pleading standards of Rule 9(b), Fed. R. Civ. P.  Id. at 56.  To satisfy the requirements of Rule 9(b), a plaintiff must (1) detail the events giving rise to the fraud, such as the statement/omission that is alleged to be fraudulent, the identity of the speaker, the location of the fraud, and the reason the statement is fraudulent and (2) allege facts "that give rise to a strong inference of fraudulent intent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015).  "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." In re Sharp, 403 F.3d at 56.  Badges of fraud include, inter alia: (1) a close relationship between the parties, (2) a questionable transfer not in the usual course of business, (3) inadequacy of consideration, (4) retention of control of the property by the transferor after the conveyance, and (5) secrecy, haste, or unusualness of the transaction.  Id.

The Knopfs have failed to adequately allege that the issuance of a mortgage by Pursuit to MSF was made with the actual intent to defraud the Knopfs.  As a threshold matter, the

16

Knopfs do not attempt to satisfy Rule 9(b) by alleging that a specific statement made by Pursuit was fraudulent, and instead rely on badges of fraud to plead their claim under § 276.  Even the allegations of badges of fraud, however, do not give rise to a strong inference of fraudulent intent, as required by Rule 9(b).

The Knopfs allege two badges of fraud.  First, they argue that the mortgage to MSF was made with haste and secrecy because of MSF's litigation conduct in seeking a cancellation of the Initial Notices.  Specifically, the Knopfs allege that the motion to cancel the notice of pendency was filed by an order to show cause on the Wednesday before Thanksgiving, served late that day, and required an opposition to be filed the Monday after Thanksgiving.  While this timing may reflect sharp practice, these allegations are inadequate for two reasons.  First, the notice to show cause was signed by Justice Tingling, and thus the deadlines for responding were adopted by the court.  But, more importantly, even if the notice of pendency had been in place, it would not have barred the parties from consummating the mortgage.

Second, the Knopfs allege that Pursuit promised not to encumber the Properties.  But, to plead a badge of fraud, the Knopfs would have to allege misrepresentations or furtive

17

conduct in connection with the mortgage to MSF, not the previous transactions between Pursuit and the Knopfs.  Because they have not done so, this badge of fraud is not adequately alleged.

The Knopfs have alleged two badges of fraud, neither of which is adequately pleaded.  Accordingly, the Knopfs have failed to allege facts giving rise to a strong inference of fraudulent intent as required by Rule 9(b), and have not stated a claim under DCL § 276.

## III. Permanent Injunction

The amended complaint contains a request for an injunction.  DCL § 279(a) provides that

> [w]here a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may . . . [r]estrain the defendant from disposing of his property

or "[s]et aside the conveyance."  N.Y. Debt. & Cred. Law § 279(a).  Relying on the Rooker-Feldman doctrine, Pursuit seeks to dismiss the claim for an injunction because of the ongoing State Court Action.[7]

---

[7] In February 2016, Pursuit sold PHC to Michael Phillips for $3,000,000.  According to MSF, $650,000 of the sale proceeds have been placed in escrow relative to MSF's mortgage.  MSF believes the funds are being held in escrow pending the outcome of this action.

18

The Rooker-Feldman doctrine "bars the federal courts from
exercising jurisdiction over claims brought by state-court
losers complaining of injuries caused by state-court judgments
rendered before the district court proceedings commenced and
inviting district court review and rejection of those
judgments." Sykes v. Mel S. Harris & Associates LLC, 780 F.3d
70, 94 (2d Cir. 2015) (citation omitted).  To satisfy the
requirements of Rooker-Feldman, a defendant must show (1) the
federal-court plaintiff must have lost in state court; (2) the
plaintiff must complain of injuries caused by a state-court
judgment; (3) the plaintiff must invite district court review
and rejection of that judgment; and (4) the state-court judgment
must have been rendered before the district court proceedings
commenced.  Id.

Here, the Knopfs prevailed in state court and are not
complaining of injuries caused by a judgment in the State Court
Action.  They have alleged a fraudulent conveyance, a claim that
is distinct from the breach of contract claim in the State Court
Action.  Moreover, any injunction the Knopfs may receive will
only set aside a fraudulent conveyance or enjoin any future
fraudulent conveyance.  As of now, there is no request for an
injunction that invites a district court review of any judgment
in the State Court Action.  Accordingly, abstention under the

19

<u>Rooker-Feldman</u> doctrine is not warranted.  The parties will be given a further opportunity to address these issues in the event the Knopfs show that they may be entitled to an injunction.

**IV.  Attorney's Fees**

Pursuit argues that it should be awarded attorney's fees under 28 U.S.C. § 1927 due to the Knopfs' improper litigation strategy in this action.  "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  An award of attorney's fees under § 1927 is appropriate "when there is a finding of conduct constituting or akin to bad faith."  <u>Zurich Am. Ins. Co. v. Team Tankers A.S.</u>, 811 F.3d 584, 591 (2d Cir. 2016) (citation omitted).  To constitute bad faith, "[t]he attorney's actions must be so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  <u>Id.</u> (citation omitted).

The defendants may renew this motion at the conclusion of the federal proceedings.  Until that time, this application is denied.

## Conclusion

MSF's November 20, 2015 motion to dismiss is granted

20

insofar as the Knopfs' claim for actual fraudulent conveyance is dismissed.  The Knopfs' claims for constructive fraudulent conveyance may proceed.

Dated:    New York, New York
          March 22, 2016


                              _____
                                      DENISE COTE
                           United States District Judge