UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
NORMA KNOPF and MICHAEL KNOPF,

                            Plaintiffs,

        -against-

MEISTER SEELIG & FEIN, LLP and PURSUIT
HOLDINGS, LLC,

                            Defendants.
-----------------------------------------------------------------------X

Case No.15 Civ. 05090(DLC)

---

## DEFENDANT MEISTER SEELIG & FEIN LLP'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500
*Attorneys for Defendant*
*Meister Seelig & Fein LLP*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 2

   A.  Plaintiff has Failed to Produce Any Evidence of Lack of Fair Consideration ...................2

   B.  Plaintiff Has Not, and Cannot, Show Bad Faith ..................................................................4

   C.  Plaintiff Has Not, and Cannot, Show That the value of MSF's Services Was Disproportionately Small ..................................................................................................9

CONCLUSION ..................................................................................................................... 11

**Cases**

*ABN Amro Mortg. Grp., Inc. v. Pantoja,*
  91 A.D.3d 440 (1st Dep't 2012) .................................................................................. 8

*Am. Inv. Bank, N.A. v. Marine Midland Bank, N.A.,*
  191 A.D.2d 690 (1993) ................................................................................................ 3

*Da Silva v. Musso,*
  76 N.Y.2d 436 (1990) .................................................................................................. 6

*Motorola, Inc. v. Abeckaser,*
  No. 07–CV–3963(JG)(SMG), 2010 WL 4145290 (E.D.N.Y. Jan. 29, 2010) ............... 4

*Grace v. Nappa,*
  46 N.Y.2d 560 (1979) .................................................................................................. 5

*HBE Leasing Corp. v. Frank,*
  48 F.3d 623 (2d Cir. 1995) .......................................................................................... 4

*Household Fin. Realty Corp. of New York v. Emanuel,*
  2 A.D.3d 192 (1st Dep't 2003) .................................................................................... 8

*In re Successor Borrower Servs., LLC,*
  489 B.R. 336 (W.D.N.Y. 2013) .................................................................................. 10

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers,*
  442 F.3d 101 (2d Cir. 2006) ........................................................................................ 5

*Reynolds v. Webster,*
  71 Hun 378 (1893) ....................................................................................................... 8

*Sardis v. Frankel,*
  113 A.D.3d 135 (1st Dep't 2014) ................................................................................. 3

**Rules**

N.Y. C.P.L.R.5523 (McKinney) ........................................................................................ 6

**Other Authorities**

U.C.C. Law § 9 (McKinney) ........................................................................................... 10

U.C.C. Law § 9-203 (McKinney) .................................................................................... 10

Plaintiffs devote the majority of their brief to recounting the tortured history of the now seven year-long state-court litigation by the Knopfs[1] against Sanford and his companies, including multiple interlocutory appeals and other appellate level proceedings. This tortured litigation history has nothing whatever to do with this action, other than that the complex and lengthy proceedings go a long way to proving that MSF rendered valuable services for its Mortgage.

The sole question before the Court is whether the $300,000 portion of the mortgage securing payment of MSF's future legal services – for which the Sanford Entities would be charged hourly, subject to Sanford's approval, after services were rendered – was a fraudulent conveyance.

In light of the undisputed evidence, and Plaintiffs' prior in-court admissions, Plaintiffs have largely abandoned their original theory of the case – that MSF did not provide services worth nearly the Mortgage amount – now stressing, for the first time, that even if they did, MSF has not proved that it took the mortgage in "good faith." In so doing, Plaintiffs misstate controlling law: "good faith" and "fair consideration" are not <u>dual conjunctive tests</u>, but rather <u>tandem yet independent indicia</u> of fraud to be assessed by a court on a case-by-case basis. Regardless, the burden is on Plaintiffs to prove those indicia – not on MSF to disprove them.

The undisputed evidence shows that: (1) the Mortgage was granted (i) <u>after</u> a final order was entered cancelling the *lis pendens,* without Plaintiffs having sought or procured, by the time the Mortgage was executed, a stay of such order, and (ii) <u>before</u> any judgment was entered against Pursuit in favor of the Knopfs (indeed the Knopfs still have no such judgment); and (2) the Mortgage was for *up to* $575,000 – that is, up to the amount of future services actually rendered by MSF on an hourly basis (with only a *de minimus* exception for a minor fixed fee), such that any unused portion of the Mortgage would never be collected. Plaintiffs have failed to raise a triable

---

[1] Capitalized terms not defined herein shall have the same meanings as are ascribed to them in MSF's moving memorandum.

issue of fact, much less carry their burden of proof; indeed, such undisputed evidence demonstrates that Pursuit's granting of the Mortgage to MSF was not in bad faith or for unreasonably small value. As such, MSF's Mortgage is not a fraudulent conveyance. The Court should therefore grant MSF summary judgment dismissing the case.

## ARGUMENT

### PURSUIT'S SECURING PAYMENT OF FUTURE LEGAL FEES BY GRANTING MSF A MORTGAGE FOR UP TO $575,000 WAS NOT A FRAUDULENT CONVEYANCE

At the December 2, 2016 conference Mr. Berry said that the Court of Appeals decision in *HBE Leasing*, 48 F.3d 623 (2d Cir. 1995) required this Court to find that the $300,000 portion of the Mortgage was a fraudulent conveyance only if it secured future services charged at a flat fee and was given to MSF while Pursuit was insolvent: "Our claim is based on the legal theory that it is a flat fee given by an insolvent and therefore it violates *HBE v Frank*, Second Circuit Decision, teachings." Transcript 7:19-22.[2] The 2015 Engagement Agreement is clear that the $300,000 was not a non-refundable flat fee, but rather was security for specific future services to be invoiced on an hourly basis at MSF's standard rates. Faced with documentary evidence that devastates its original theory of the case, Plaintiffs now invent a new theory – that MSF did not take its Mortgage in "good faith" – and, ignoring their prior admissions, secondarily argue that the value of the services provided by MSF was disproportionately small. Neither position is correct.

### A. Plaintiff has Failed to Produce Any Evidence of Lack of Fair Consideration

On a defendant's motion for summary judgment in a fraudulent conveyance case, once the moving party presents evidence of that it gave fair consideration, the non-moving party must

---

[2] A copy of the transcript appears as Exhibit A to the moving Declaration of Howard S. Koh in Support of Meister Seelig & Fein LLP's Motion for Summary Judgment. CM/ECF # 102.

[999-310/5238388/1]                                        2

submit sufficient evidence to establish a question of fact as to whether the consideration was fair. *Am. Inv. Bank, N.A. v. Marine Midland Bank, N.A.*, 191 A.D.2d 690, 692 (1993).

Plaintiffs contend that fair consideration is made up of dual, conjunctive components – disproportionately small value and good faith. This is wrong. As the Appellate Division explained in *Sardis v. Frankel*, 113 A.D.3d 135 (1st Dep't 2014), a case heavily relied upon by Plaintiffs, value and good faith are "two indicia of 'fair consideration' for conveyed property: the adequacy of what is given in exchange for it and 'good faith.'" *Id.* at 141. That is, they are not conjunctive tests, but rather distinct indicia, each of which may be independently probative of fraudulent intent. For example, if an enthusiastic collector of Monet's knows that a Monet-owner has a judgment against her, and then buys her Monet but pays a full market price, the transaction is not fraudulent, or constructively fraudulent, even though the buyer had knowledge of (and in a sense exploited) the judgment. One of the indicia is there; one isn't; and the transaction is not assailable.

*Sardis* could not be more different than the case at bar. In *Sardis*, a multi-million arbitration award prompted the newly minted debtor (Sofia) to hire Proskauer Rose to prepare a multi-step, multi-property "asset protection plan" which included using nearly all her cash to buy an exempt homestead in Florida and transferring a valuable Manhattan apartment to her son, who had knowledge of the award, for $1. The Court noted that "[w]here the transferor has knowledge of a judgment, the transfer of funds available to satisfy the judgment made at the judgment debtor's direction will be set aside as lacking in good faith[.]" *Id.* at 142.

Here, significantly, the Knopfs had no judgment against Pursuit when MSF took its Mortgage and, indeed, <u>still have no such judgment</u>. The Appellate Division observed: "Sofia's conveyance of the subject Manhattan condominium [was] part of an 'asset protection plan' devised with the assistance of counsel immediately after the arbitration award was rendered against her."

The Appellate Division also found that the conveyance was part of a "concerted effort to place her assets beyond the reach of impending judgment creditors. *Id.* at 143. In other words, the transfer of the apartment was part of an elaborate fraudulent scheme.

Ultimately the *Sardis* court found that the transferor's son was a "participant" in the fraudulent asset protection scheme. In *Sardis*, there was abundant evidence of bad faith, including a multi-pronged asset protection plan by a major law firm (the fraudulent scheme), and the transferee's knowledge of an unsatisfied judgment against the transferor at the time of the transfer (his participation in the fraudulent scheme). Moreover, in *Sardis*, the transferee had knowledge of a final judgment, no longer subject to appeal, at the time of the transfer.

In contrast, here, MSF had knowledge only of a hotly contested but not-yet-adjudicated contract claim. *Sardis* is nothing like the case at bar and is therefore inapposite.[3]

### B. Plaintiff Has Not, and Cannot, Show Bad Faith

The Second Circuit has explained that if the plaintiff cannot show that disproportionately little value was paid, lack of good faith means the plaintiff must show that the transferee has "actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995). Here, not only have the Plaintiffs failed to present evidence of MSF's alleged knowledge of a fraudulent scheme, they have not even presented evidence that such a scheme existed. The evidence all points to Pursuit seeking funds to hire defense counsel. That is not a "fraudulent scheme."

Without the necessary fraudulent scheme, Plaintiffs' focus instead on what they call Sanford's "anti-hypothecation" promise in a writing between the parties to the underlying

---

[3] Equally unavailing is *Motorola, Inc. v. Abeckaser*, No. 07–CV–3963(JG)(SMG), 2010 WL 4145290 (E.D.N.Y. Jan. 29, 2010), which Plaintiffs misquote on page 1 of their Opposition Brief – the case does not mention encumbrances – and the court found there was no knowing interference with the contract.

litigation, positing that because MSF had knowledge of the document containing this promise, it was not a good faith transferee of the mortgage lien. The terms of the "contract" between the Knopfs and Sanford were embodied in six different "agreements" signed over a period of six years – none drawn by lawyers for either side – which contradict one another repeatedly and were in consequence hotly contested throughout the litigation, including Sanford's claim that the Knopfs had violated critical promises and thus repudiated the agreements.[4] Certainly those disputes were not resolved in January 2015 when the Mortgage was given to MSF.

Indeed, the Knopf's complaint in the state law action [Berry Decl. Ex. 1], in particular the fourth cause of action for constructive trust, shows that the Knopfs themselves had entirely abandoned the so-called "anti-hypothecation promise." That promise is never mentioned once in the complaint. More telling, the fourth cause of action is predicated on an alleged promise that Sanford would "transfer the properties to the Fund or the Knopfs at some later date." Id. at ¶43. Yet, that promise never appears in the May, 2006 document containing the so-called anti-hypothecation promise. The fact is that the Knopfs had an entirely different theory of the case and were not seeking to enforce the May 2006 agreement, at least not the anti-hypothecation promise, even though Pursuit long ago mortgaged PHC to Philips, its eventual buyer. Yet Knopf never made any claim against Sanford for that alleged breach of the anti-hypothecation promise.

Perhaps that is why Plaintiffs' counsel never mentioned the anti-hypothecation promise as the lynchpin of his case at the December 2, 2016 conference with this Court. Instead, he was solely

---

[4] When there is a material breach of a contract, the counter-party's performance is excused. *Grace v. Nappa*, 46 N.Y.2d 560 (1979); *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101 (2d Cir. 2006) ("When a party has breached a contract, that breach may excuse the nonbreaching party from further performance if the breach is 'material'."). Indeed, one of Pursuit's fundamental contention in the underlying action was that the Knopfs had materially breached the May 2006 agreement years before the lawsuit commenced and that the agreement was, therefore, repudiated years previously by the Knopfs. *See* Answer (by corporate defendants) annexed to the Declaration of Howard S. Koh dated February 28, 2017 ("Koh Decl.") as Exhibit A, at ¶¶ 51, 56, 57 and 58 and Verified Amended Answer (by Sanford), Koh Decl. Ex. B, Affirmative Defenses 5, 8, 9 and 10.

[999-310/5238388/1]            5

focused on the $300,000 portion of the Mortgage, claiming it was a non-refundable flat fee. Transcript at 3:25 to 4:7.

In truth, the anti-hypothecation/good faith argument is a new creation – necessity being the mother of invention – spawned by the evidence proving, as MSF's moving papers now show, that the $300,000 was simply a refundable retainer deposit – the disbursement of which would have to be approved by Sanford – for future services on an hourly basis, and that those future services were rendered having a value far exceeding $300,000. Realizing their original theory of the case is disproved by the evidence, Plaintiffs have simply saddled another horse.

In any event, knowledge of a disputed contract obligation is a far cry from knowledge of an unsatisfied final judgment. More important, MSF took its Mortgage after the State Court had issued a final judgment cancelling the *lis pendens* and after the State Court Clerk had cancelled it. How could MSF possibly be regarded as having taken the Mortgage in bad faith, after that order was handed down?

Indeed, on this score, the New York Court of Appeals decision in *Da Silva v. Musso*, 76 N.Y.2d 436 (1990), is dispositive. In *Da Silva*, a party purchased real property that had been the subject of a *lis pendens,* after a specific performance claim had been dismissed and the associated *lis pendens* had been cancelled, but with knowledge of a then pending appeal of the dismissal of the action that gave rise to the *lis pendens*. In holding that the third-party purchaser took free and clear title even though the Court of Appeals ultimately reversed and reinstated the dismissed claim asserted by the *lis pendens* filer, and that the specific performance claimant was relegated to money damages against the former real property owner, the high court held: that under CPLR 5523, "an appellate court 'may order restitution of property or rights lost by [enforcement of a] judgment or order, *except that where the title of a purchaser in good faith and for value would be affected, the*

*court may order the value or the purchase price restored*' *Id.* at 441(citation omitted; emphasis in original)." The Court of Appeals continued: "The provision's effect is to insulate the title of a person who purchased after entry of final judgment from the effects of an appellate reversal, at least in the absence of an outstanding notice of pendency." *Id.* Hence the high court rejected the plaintiff's argument that "a purchaser who has actual knowledge of a pending appeal affecting title to the property does not qualify as one acting with 'good faith' within the meaning of CPLR 5523." *Id.* at 441-42.

Thus, New York's highest court has held that, while under the common law a person with knowledge of a pending claim might not be a good faith purchaser, under the CPLR's statutory scheme for notices of pendency, which supplanted the common law, once a *lis pendens* is cancelled by a trial court, any third party – even one with knowledge a pending appeal of a dismissal of the claim or of an order cancelling a *lis pendens* – takes title in good faith, relegating the *lis pendens* filer to a money damages claim against the former property owner.

The *Da Silva* holding thus immunizes MSF – the transferee of a mortgage lien after a final order cancelling the Knopfs' *lis pendens*, while such order was unstayed – from a claim to invalidate its property interest, and relegates the Knopfs to money damages from Sanford and Pursuit. *Da Silva* is dispositive and defeats the Knopfs' fraudulent conveyance claim.[5]

Plaintiffs try to bolster their newly minted good faith argument by saying that MSF's failure to halt a title company from submitting the duly signed and notarized Mortgage to the New York City Registrar somehow violated Justice Acosta's interim injunction. That order stayed

---

[5] But this does not leave the Knopfs without a remedy. Precisely because *Da Sliva v Musso* states the controlling law, competent counsel immediately seek a stay whenever their client's *lis pendens* is cancelled, either at the *nisi prius* level or from the Appellate Division. Often competent practitioners seek a very short stay from the trial judge while they go to Appellate Division. Plaintiffs' counsel did neither. Instead he waited over two weeks. The Knopfs recourse is against their lawyer for malpractice, not against MSF for following controlling law.

[999-310/5238388/1]                                                7

"defendants from <u>encumbering</u> the property pending an expedited motion" (emphasis added). In the first instance, the Court might ask itself why Plaintiffs failed to bring this alleged violation of Justice Acosta's order to the attention of a state court judge? The answer is: they did, but such claim was rejected. Plaintiffs raised the alleged violation to the Appellate Division and as well when they sought a pre-judgment attachment from the trial court. In each instance the courts rejected Plaintiffs' position: The Appellate Division affirmed the trial court's order cancelling the *lis pendens* without noting any violation of Justice Acosta's order by MSF and the trial court rejected Plaintiffs' application for a preliminary injunction.[6]

There was no violation of Justice Acosta's order. A mortgage lien is conveyed – and therefore the subject property is "encumbered" thereby – when the mortgage instrument is executed, which, in this case, occurred before Judge Acosta's order was signed (indeed before it was sought). Plaintiffs cite several cases for this very proposition. *See* Opposition Brief, Section C.II. (c). The act of recordation is not necessary to the granting of the lien, and so no "encumbrance" arises from the act of recordation. Rather, the recordation merely fixes the priority of a previously granted lien *vis a vis* other creditors. *See Reynolds v. Webster*, 71 Hun 378 (1893); *ABN Amro Mortg. Grp, Inc. v. Pantoja*, 91 A.D.3d 440 (1st Dep't 2012); *Household Finance Realty Corp. of New York v. Emanuel*, 2 A.D.3d 192 (1st Dep't. 2003). Thus, the full conveyance of the lien and the "encumbering" of the PHC took place before Justice Acosta signed his order. Plaintiffs' counsel is simply trying to pin his own malpractice on MSF.

The Court should therefore reject the Knopf's specious and newly invented anti-hypothecation/good faith argument, which itself is not tendered in good faith.

---

[6] *See* Koh Ex. B.; ECF #35, Exhibit 9; Berry Aff. Ex. 20.

[999-310/5238388/1]                              8

### C. Plaintiff Has Not, and Cannot, Show That the Value of MSF's Services Was Disproportionately Small

Plaintiffs had previously conceded that charges that MSF incurred after Pursuit gave its Mortgage were legitimate and worth at least $300,000.[7] At the December 2, 2016 conference, Plaintiffs' counsel said "clearly the amount of work done for the future services exceeds $300,000. We couldn't possibly contest that in good faith." Transcript page 9, lines 9-11. Now Plaintiffs protest that MSF has not shown that the value of the services was not disproportionately small. But proving disproportionately small value is the Knopf's burden; regardless, MSF addressed this issue in the moving declaration of Mr. Koh, at paragraph 11, which summarized MSF's time charges and explained that "because MSF's time charges do not appear to be in dispute, we have not burdened the Court with copies, but will do so upon request."

Plaintiffs' entire discussion on this point evidences Plaintiffs' misunderstanding of the Mortgage. Plaintiffs claim that the value is determined at the time the exchange is made, not when the services are rendered, and contend that MSF's post-Mortgage services being worth more than $300,000 – a fact Plaintiffs have already admitted – is immaterial. This position shows that Plaintiffs fail to understand that the Mortgage was not "for $575,000," but rather for "up to $575,000." Koh Decl. Ex. G. The Note similarly contains the "up to" language and further

---

[7] In fact, MSF, in its arbitration with Pursuit, has sought an award far in excess of $1,000,000. This figure is significantly larger than the $300,000 at issue here because, under the retainer agreement, Pursuit is obligated to cover MSF's costs to recover its fees in the arbitration, which have reached $266,069.75, as well as its fees in the foreclosure action against Philips ($13,706.58), plus interest. In addition, MSF believes it is entitled to recover from Pursuit its fees in this action (which were slightly over $300,000 as of January 31, 2017) because Pursuit sold the property which secured the Mortgage without satisfying the Mortgage. On February 20, 2017, in an obvious attempt to frustrate MSF from collecting its prospective arbitral award, Pursuit Holdings, LLC filed for bankruptcy protection and relief. *See In re Pursuit Holdings (NY), LLC f/k/a Pursuant Holdings LLC*, United States Bankruptcy Court for the District of Delaware 17-10289. This filing has no effect on the present motion, which concerns a dispute between two non-debtors, MSF and the Knopfs, and does not implicate Pursuit Holdings, LLC. While Pursuit was named as a defendant in this action, this Court previously directed the Clerk to enter a default against Pursuit Holdings LLC (*see* CM/ECF docket No. 66.). Although, no entry of default appears on the CM/ECF system, there are no pending proceedings before this Court against Pursuit. Of course, the filing of the Bankruptcy will only increase MSF's cost of collecting its fees from its former clients.

provides that the money is to be paid "as and when required by the terms of that certain retainer letter." Koh Dec. Ex. F. Thus, contrary to Plaintiffs' contention, the $300,000 was not earned when the Mortgage was given and MSF was not entitled to any of the $300,000 before it rendered the specified future services, and Sanford approved those charges. (Only $275,000 of the Mortgage was for past services, and Plaintiffs do not challenge that portion of the Mortgage.)

The key case on point is *In re Successor Borrower Servs., LLC*, 489 B.R. 336 (W.D.N.Y. 2013), discussed in MSF's moving brief. Plaintiffs try to distinguish *Successor* by explaining that the security interest in that case was a UCC Article 9 interest in a business asset and, under UCC 9-203, the security interest does not attach until both the agreement has been executed and the "value has been given." Again, Plaintiffs misapprehend the Mortgage – the Mortgage secures a Note evidencing an obligation of "up to" $575,000 representing the amount due for legal fees per the referenced retainer agreement, and payment can be made under the Note only once the services have been rendered and the fees are approved by Sanford and earned under the retainer agreement.

Plaintiffs' final argument on this point, that the benefit of the services rendered to Pursuit was less than $300,000, is directly belied by both Plaintiffs' previous admission to the contrary in open court and the fact that such services were actually rendered and were largely successful. Plaintiffs claim that "given the grant of summary judgment in the Knopfs' favor, the likelihood that the Courts would license any effort by Pursuit to liquidate its assets in order to transfer the proceeds beyond the Knopfs' reach was minimal." Plaintiffs thus contend that there was minimal value to Pursuit in a Mortgage to secure legal fees to fight the Knopfs' motion for an attachment. And yet, MSF *was successful* in defeating the Knopfs motion for a pre-judgment attachment and, more than two years after the summary judgment appeal, Plaintiffs have still not been able to

secure a judgment and Pursuit has, in fact, sold one of its properties. History has thus disproved this claim.

## CONCLUSION

MSF took a mortgage from its client to secure payment for future legal services that were invoiced on an hourly basis. That is not a fraudulent conveyance. The Court should grant MSF summary judgment.

Dated: February 28, 2017

/s/ Howard S. Koh
Howard S. Koh, Esq.
Randi Lane Maidman, Esq.
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500

*Attorneys for Defendant Meister Seelig & Fein LLP*